Little Rock and Ft. Smith R. R. Co. v. Perry.

LITTLE ROCK AND FT. SMITH R. R. CO. v. PERRY.

1. PLEADING AND PRACTICE: *Equitable relief in actions at law.*
   Relief of a purely equitable nature cannot be given in an action properly begun and prosecuted at law.

2. SAME: *Transfer of cause from law to equity docket.*
   When a complaint at law discloses a purely equitable cause of action, it may be transferred on motion of either party, or of the court's own motion, to the equity docket; but the failure of the court to make the transfer, when neither party asks it, will not be error for reversal. The rule is the same where a purely legal action is brought in equity.

3. SAME: *When legal relief administered in equity—no equity at law.*
   When a complaint in equity contains any equitable element to which the jurisdiction of a Court of Chancery may attach, the court may, in the same cause, administer all proper legal relief essential to complete justice at once to all parties before it; but actions at law, purely legal upon their face, must be decided on legal principles alone.

4. RAILROAD COMPANIES: *When bound by contracts of other parties.*
   Whenever a third party enters into a contract with the promoters of a railroad, which is intended to enure to the benefit of the company, and it takes the benefit of the contract, it will be bound to perform it.

5. CORPORATION: *When bound for services rendered before its existence*
   In order to recover against a corporation in an action at law for services rendered before its being, the plaintiff must prove either an expre s prom-

Little Rock and Ft. Smith R. R. Co v. Perry.

ise of the new company, or that the contract was made with persons then engaged in its promotion and taking preliminary steps thereto, and was made on behalf of the new company in the expectation of the plaintiff, and with the assurance of the projectors, that it would become a corporate debt; and that the company afterward entered upon and enjoyed the benefit of the contract and by no other title than that derived through it.

6. EVIDENCE: *Competency of, when and by whom determined.*

It is the Province of the court to determine, when evidence is offered, whether it tends to prove the issue. After it has gone to the jury, unless wholly irrelevant, it is for the jury to determine how far it, with other circumstances, conduces to prove the issue.

7. PRACTICE: *Directing jury what verdict to find.*

If there is any evidence whatever, however slight, pertinent to the issue, the court should not take it from the jury and direct their verdict, even if it is satisfied that it would grant a new trial if a verdict should be found upon it.

8. STATUTE OF FRAUDS: *Promise of a corporation to pay debt contracted before its organization.*

A verbal promise of a corporation to pay a party's claim, contracted with other parties prior to the incorporation, is void by the statute of frauds, as an undertaking to pay the debt of a third person.

9. CORPORATION: *Not bound by contracts of individual members.*

A corporation is bound only by its own contracts, and not by those of the individual members in their private capacity..

10. VERDICT: *Preponderance of testimony.*

The jury can find for the party holding the affirmative of the issue, only when there is a preponderance of testimony in his favor. The degree of preponderance is immaterial, but there must be some, of which they are the judges.

11. EVIDENCE. *Bill of particulars when not filed as exhibit.*

When a suit is upon an aggregate account filed as an exhibit, it is no surprise to the defendant to introduce and prove the bill of items composing the aggregate, though not filed as an exhibit.

12. PRACTICE IN SUPREME COURT: *Judgment upon two counts erroneous as to one.*

A judgment *in solido*, upon two counts, will be reversed *in toto*, if erroneous as to one.

APPEAL from *Pope* Circuit Court.

Hon. R. C. BULLOCK, Special Judge.

STATEMENT.

This suit was commenced in the Pope Circuit Court, by Perry, against the Little Rock and Fort Smith Railway Company, in May, 1877. The plaintiff's case is best stated by copying the following amended complaint, filed on the 26th September, 1879.

" The plaintiff, J. H. Perry, states that the defendant, the Little Rock and Fort Smith Railway, is indebted to and owes him the just sum of $8,053.77, after all just credits, for work and labor done, materials furnished, supplies advanced, and money laid out and expended by him, on mutual running account with said defendant, from January, 1873, till October 26, 1875, in and about the building and constructing the railroad of said defendant, to wit : the Little Rock and Fort Smith Railroad, from a point on said road known as Perry's Station, to Clarksville, Ark.    The items thereof will more fully appear from an account herewith filed, marked Exhibit 'A,' amounting in the aggregate to the sum of $9,823.77, and that he has received $1,770, and no more ; but that, after giving all just credits, there remains due and unpaid him thereon the just sum of $8,053.77, with interest thereon from twenty-sixth day of October, 1876, at the rate of six per cent. per annum.    The plaintiff further states that, by the provisions and conditions of the land grant by the United States to the Little Rock and Fort Smith Railroad Company, unless at least eighty miles of said railroad from the point of beginning, had been constructed and completed by the thirteenth day of May, 1873, the right of said Little Rock and Fort Smith Railroad Company to all those lands or sections of land granted to said Little Rock and Fort Smith Railroad Company, in and by the act of Congress of the United States, approved February 9, 1853, entitled an act granting the right of way and making a

grant of lands to the State of Arkansas, for the use of the
Little Rock and Fort Smith Railroad Company, to aid in
constructing a railroad from Little Rock to Fort Smith, and
by the act of Congress of the United States, approved July
28, 1866, entitled an act to relieve and extend the provis-
ions of the aforesaid act, and for other purposes, would
have been forfeited, and the title to the unsold lands inclu-
ded in said grant, to the United States.  That, on the first
day of January, 1873, said railroad was constructed to what
is known as Perry's Station, a distance of sixty miles from
the beginning point of said railroad, and on the said first
day of January, 1873, the said Little Rock and Fort Smith
Railroad Company, being insolvent and unable to complete
the construction of said road within time to save their said
lands granted to them as aforesaid, the bondholders of said
railroad company, to whom the said railroad company had
mortgaged their said lands, together with the right of way,
privileges and franchises, for the sum of five million dollars,
to aid said company in the construction of said railroad from
Little Rock to Fort Smith, in view of future organization,
and to save, unimpaired, their rights to said lands, under
said mortgage, and to prevent a reverter thereof to the Uni-
ted States, took charge of said railroad for the purpose of
constructing the same the required number of miles to save
and prevent a reverter of the aforesaid lands mortgaged to
them to secure the payment of the railroad bonds aforesaid;
and between the first of January, 1873, and the thirteenth
day of May, same year, said bondholders did, by their mu-
tual and joint efforts, construct said railroad from said Perry's
Station to Clarksville, Ark., being a distance of about forty
miles, and that the work and labor done, supplies advanced,
materials furnished and money laid out and expended by
the plaintiff, was, by contract with said bondholders, and at
their special instance and request, done in and about the

construction of said railroad from Perry's Station to Clarksville, aforesaid. That, afterwards, the said bondholders proceeded against the said Little Rock and Fort Smith Railroad Company and foreclosed their mortgage, as aforesaid; and on the nineteenth day of December, 1874, said bondholders bought, at public auction, the right of way, lands, rolling stock, privileges and corporate franchises of the Little Rock and Fort Smith Railroad Company, and thereby succeeded to all the property, privileges and franchises of said railroad company, and became a duly organized corporation, under the laws of the State, by the name of the Little Rock and Fort Smith Railway, for the purposes of constructing and carrying on the business of railroading from Little Rock to Fort Smith, and have and still continue to operate said road since the nineteenth day of December, 1874. The plaintiff further avers that the bondholders, formerly of the Little Rock and Fort Smith Railroad Company, are the identical and same persons, who became and are now the corporation that compose the defendant, Little Rock and Fort Smith Railway, and who completed the construction of the said railroad from Perry's Station to Clarksville, as aforesaid; and further states that the said corporators of the defendant were, all of them, large stockholders in the Little Rock and Fort Smith Railroad Company, and owned the majority of stock of said railroad company.

" The plaintiff further states that after the defendant had duly organized, as aforesaid, they accepted the results and enjoyed the benefits of his said labor, materials furnished, supplies advanced, and moneys on account, as aforesaid, and agreed to pay him therefor, and on the twenty-sixth day of October, 1876, did pay thereon the sum of $1,770, leaving due and unpaid thereon the sum of $8,053.77, with interest as aforesaid.

II.  " The plaintiff further states that the defendant is in-

debted to and owes him the just sum of $109.20, on account of labor done, materials furnished, advances and money laid out and expended for and in the interest of said defendant, at its special interest and request; the items whereof will more fully appear from an account herewith filed, marked Exhibit 'B,' and that no part thereof has been paid by the defendant, or any person for him, and that the same is due, with six per cent interest thereon, per annum, from September 20, 1877."

Prayer for judgment for debt, cost, and other relief.

---

## EXHIBIT A.

LITTLE ROCK AND FORT SMITH RAILWAY

*In Account with* J. H. PERRY.

1873.

Feb. and March. To 11,315 cross-ties at 30c.... $3,394.50

By cash on same............. 270.00

To balance due on cross-ties.. $3,124.50

June 30. To building depot at Russellville, Ark.. $1,600.00

To running account from January, 1873,
to July, same year................. 4,829.22

$6,429.27

To amount brought forward.......... $9,553.77

1875.

Oct. 26. By cash........................... $1,500.00

Total amount due October 26, 1875.... $8,053.77

Little Rock and Ft. Smith R. R. Co. v. Perry.

## EXHIBIT B.

LITTLE ROCK AND FORT SMITH RAILWAY

To J. H. PERRY, *Dr.*

1876.

April 10. To hauling fruit trees to farm and caring
for same ........................$ 10.00

June 6, 7, 8. To three days' attendance as a witness
at Little Rock................... 6.00
To mileage ...................... 7.50

Sept. 20. To twenty cords wood at $2 ........... 40.00

1877.

Dec. To wood platform...................... 23.50

Total amount.................$ 87.00

1875.

Jan. Paid Kimball & Perry, amount of overcharge. 22.20

$109.20

The defendant answered specifically denying every material allegation in the complaint. Upon the trial before a jury, the plaintiff proved that, "in January, 1873, the Little Rock and Fort Smith Railroad Company had, through means derived from the sale of certain bonds of said company, secured by two mortgages executed by said company before that time, one upon the railroad then completed and to be completed from Little Rock to Fort Smith, and all the rolling stock and personal property appertaining thereto, for the sum of three millions five hundred thousand dollars, and the other to secure four millions of dollars of such bonds upon the congressional land grant belonging to said company, completed, or caused to be completed, the said railroad from Argenta to Perry's station, a distance of sixty-five miles, but had failed, become insolvent, and work upon the building of said road had

ceased at that point. That, by provisions of the act of Congress of February 9, 1853, granting said land to said company, and other acts of Congress supplemental thereto, it was required that twenty miles more of said railroad, from Perry's Station mentioned, should be completed by the nineteenth day of May of that year, or in default thereof, such land grant along the line of the road not completed would become forfeited to the United States, and that, unless twenty miles still further west should be built by the nineteenth day of May, 1874, all lands along the line of the road not completed, would likewise revert to the government. That certain persons in Boston, who had purchased and were holders of said bonds so secured by the mortgage of said company upon all of said lands, to-wit: Elisha Atkins, Benjamin F. Bates and others, entered into an agreement with the President and Directors of the said Little Rock and Fort Smith Railroad Company to subscribe and advance sufficient money to complete the said line of road from said Perry's Station to Clarksville, a distance of forty miles, with a view of protecting and increasing the security of the said land mortgage by saving the said land grant from such forfeiture. That said bondholders did subscribe and advance sufficient money so to complete the said road to Clarksville, to-wit, the sum of $50,000 and upwards. That, pursuant to such agreement with said company, and in order that said fund might not be misapplied, but might be faithfully appropriated to the building and completion of said line of road, one George Everett, of Boston, and who was also a holder of said land bonds, was employed and authorized to expend the said money and cause the same to be used and paid out in the work of completing the said line of road. That the said Everett, in performing the said work of completing the road, acted as agent for all parties concerned in the said railroad. That the said Everett, in January, 1873,

let the contract for completing the said road to a company composed of S. B. Beaumont, A. P. Curry and W. S. Oliver, who proceeded to lay down the track and complete the said road to Clarksville, and were paid according to the terms of their contract by the said Everett, with money subscribed by the parties in Boston, and during the completion of the said work, the said plaintiff, Perry, who was at that time acting as the agent of the Little Rock and Fort Smith Railroad Company, at Perry's Station, with his own means, built and constructed the depot building and store-house, at Russell-ville, upon the railway company's right of way, which was built under an agreement with the said Everett that he should be paid for the said building.  That said Perry was the owner at that time of eleven thousand three hundred and fifteen cross-ties, which were piled up along the line of said road, and the said Perry entered into an agreement with the said Everett to sell him the said ties at the sum of three thousand three hundred and ninety-four dollars and fifty cents, which was thirty cents apiece, and the said Everett caused the said ties to be laid down and used in making the track of said road ; but the said Everett, though he promised to pay for the said ties, never did pay therefor, except the sum of two hundred and seventy dollars, leaving a balance due of three thousand one hundred and twenty-four dollars and fifty cents.''   And thereupon the plaintiff, to prove the item of four thousand eight hundred and twenty-nine dollars and twenty-seven cents in his bill of particulars, exhibited with his complaint, produced in court his bill of particulars, comprising a running account amounting in the aggregate to that sum, and offered to read the same in evidence.

The account is long, containing a great many items, and is not necessary to be inserted here.  The defendant objected to its being proven and read as evidence on the ground, ''that the said defendant was taken by surprise thereby, the

same never having been filed in the cause nor exhibited to defendant;" but the court overruled the objection and permitted the same to go as evidence to the jury. The plaintiff then proved, by his own evidence, "that the supplies, material and money mentioned in the said bill of particulars were received by Everett, and he (Everett) agreed to pay the same, but had failed to do so. That the said amount exhibited with his complaint, comprising the items of $3,124.50 for ties and $1,600 for building depot at Russellville—$4,829.27, the aggregate of said running account, was a just claim against the said Everett, was contracted by him, and he agreed to pay the same, but never did pay it or any part of it. Said Perry said to the said Everett, at the time said debts were contracted, that he would not advance ties and material to the Little Rock and Fort Smith Railroad Company, because the company was insolvent and had failed to pay him a debt they already owed him, and that said Everett represented to him that it was not the Fort Smith and Little Rock Railroad Company that was doing the work; that said Everett represented the bondholders of said company, and they (the bondholders) were furnishing the money to do the said work, and were completing the said road to Clarksville in order to save the land grant to said road, without which the said bondholders had no interest in Arkansas, and that they (the bondholders) were doing so with a view of taking charge of the road themselves;" and thereupon it was admitted by the parties "that the bondholders of the Little Rock and Fort Smith Railroad Company, in April, 1874, caused bills in chancery for the foreclosure of the mortgages on said road and lands to be filed in the Circuit Court of the United States for the Eastern District of Arkansas, at Little Rock, and that on the sixteenth day of November in that year decrees were rendered in that court foreclosing said mortgages and ordering a sale of the whole of said mortgaged

property ; such sale to take place at the door of the court-house of said United States Court, in Little Rock, on the tenth day of December, 1874. That such sale was made accordingly, and the property was sold to the highest bidder, for cash in hand.  That the property was purchased by one George O. Shattuch, Francis H. Weld and George Ripley, as the agents and attorneys of persons holding a majority in value of the road and land bonds of the said railroad company, and such purchase was made for the benefit of all the bondholders who should, within one year, surrender their bonds and take stock therefor in a new company to be formed, under the provisions of the general railroad law of Arkansas, and of an act of the Legislature of Arkansas, supplementary thereto, approved the ninth day of December, 1874.   That, on the nineteenth day of December, 1874, the said purchasers, and their associates, did organize themselves into a new joint stock company for the purpose of owning, completing and operating the said railroad, so purchased, in pursuance of the provisions of the general railroad law, as amended by the said act of ninth of December, 1874, under the name and style of the Little Rock and Fort Smith Railway, which is the defendant.  That said company was incorporated on the nineteenth day of December, 1874, and never had any existence previous to that time.   That, on the organization of said company, all the property so purchased under the decree foreclosing the said mortgages, was converted into stock at an estimated value, and such stock was put upon the market for sale.   That a large majority, though not all of the holders of the railroad and land bonds secured by the said mortgages, did afterwards surrender their bonds to said company, and did receive in lieu thereof stock in the new company, and thereby became stockholders in said company and part owners of the said railroad and lands formerly belonging to the Little Rock and Fort

Smith Railroad Company, and many of whom still continue to be said stockholders and owners. That after said Little Rock and Fort Smith Railroad was purchased by said bondholders, those who had furnished the means to build said road-bed from Perry Station to Clarksville, in 1873, were reimbursed in bonds of the new company for such advances. And thereupon, the plaintiff further testifies, as a witness, that he had at divers times presented his said claim to Elisha Atkins, who was a large bondholder of the old company, and to other bondholders who have since become stockholders in the defendant company, when they were here from Boston, and urged upon them to pay his said claim, or to make some provision for the settlement thereof, and they had promised to do so, but had failed. That after the organization of the defendant company, he presented the claim to Joseph H. Converse, the President of the company, and he verbally promised to pay the same or have the same settled in some way, but kept putting him off from time to time until at last the said Converse, representing that the stock of the defendant company was, or would be, worth dollar for dollar in the market, he did agree with the said Converse to take $1,500 in cash and $5,500 in the stock of defendant company, and said Converse did pay him the sum $1,500 cash and draw an order upon the Treasurer of said company, in Boston, for the stock, which he accepted. That this settlement was to be in full for all claims which he (plaintiff) had or held against the defendant company, or the Little Rock and Fort Smith Railroad Company, or any of the bondholders thereof; and the plaintiff, upon the receipt of such order for stock, gave said Converse a receipt in full against all such claims, but that, finding that such stock was not worth dollar for dollar, but was worthless, or nearly so, he applied to said Converse to have said agreement rescinded, so far as the payment of the stock was concerned, and that

part of the agreement was rescinded, and the papers so given were returned to the parties respectively, and the said Converse has ever since failed and refused to pay anything. That the $1,500 cash payment was not rescinded, because it was the amount which plaintiff had agreed to take for the depot house and the depot house was given up upon such payment being made."

The plaintiff then proved that the items of his account stated in the second paragraph of his complaint were correct.

Among the instructions, given by the Court to the jury for the plaintiff, were the following, to which the defendant objected:

"*First*—If the jury find, from the evidence, that the bondholders of the Little Rock and Fort Smith Railroad Company, or any number of them constituting a majority of the defendants, according to the amount of stock in value, by themselves or their agents, duly authorized, contracted with the plaintiff for the materials and supplies, as claimed in the first count of plaintiff's complaint, with a view of organizing themselves into a company, and did afterwards organize themselves into what is now the Little Rock and Fort Smith Railway, the defendant, and that the plaintiff did furnish the same under said contract, the defendant thereby became liable to the amount thereof so furnished, and that the defendant accepted the same by themselves or by agents, and enjoy the benefits thereof, they will find for the plaintiff the amount they may find to be due therefor.

"*Second*—If the jury believe, from the evidence, that the defendant, the Little Rock and Fort Smith Railway, subsequent to its organization, accepted the results and enjoyed the benefits of the advances, supplies and materials furnished by the plaintiff, as charged in the first paragraph of

the complaint, and promised to pay therefor, they will find for the plaintiff.''

For the defendant the court gave the first and tenth of the following instructions, and refused the others :

"*First*—That the defendant, the Little Rock and Fort Smith Railway, is a different person in law and fact from that of the Little Rock and Fort Smith Railroad Company, nor liable in any manner for its debts by virtue of its organization, nor by virtue of its having purchased the property formerly owned by that company, under decree of Chancery, foreclosing a mortgage executed by that company ; that such debts are debts of a third person, as to this defendant company, and to authorize the jury to find against the defendant upon such debts it must be proved that the defendant assumed to pay such debts by a contract valid in law for that purpose.

"*Second*—That the defendant company is also a different person in law and fact from the bondholders or stockholders of the Little Rock and Fort Smith Railroad Company, or from its bondholders or stockholders either individually or collectively, and cannot be made liable for any debts or undertakings of any such bondholders or stockholders, except by a valid contract for that purpose by the company after its incorporation.

"*Third*—That under the law of its incorporation defendant company is wholly incapable of binding itself or becoming obligated to pay the debts of third persons, except by resolution of its board of .directors or the resolution of a stockholders' meeting in regular session ; that neither the president nor any of its officers has individually and separately any power to make any contract binding upon the company for the payments of any such collateral debts.

"*Fourth*—That unless the jury find from the evidence
    12—37

that the plaintiff's cause of action was originally contracted with defendant company, they will find for the defendant, unless they further find that the defendant company assumed to pay the same by a regulation of its board of directors, or by a resolution of a regular stockholders' meeting.

"*Fifth*—That evidence showing that the plaintiff's cause of action was originally contracted with the Little Rock and Fort Smith Railroad Company, or by any and all persons holding the bonds of said company, secured by mortgage upon all the property of said company previous to the incorporation of the defendant company, and with the view of protecting or increasing their mortgage security by saving the land grant, is not evidence tending to show any obligation or liability on the part of defendant company to pay such claim, nor does evidence tending to show that the president or other officers of said defendant company verbally undertook or promised to assume and pay such claim, tend to prove an obligation or liability on the part of said defendant to pay such claim, and the jury will disregard all such evidence as immaterial.

"*Sixth*—That there is not evidence, sufficient in law, to sustain a verdict for the plaintiff upon the first count or paragraph of the plaintiff's amended complaint, filed on the twenty-sixth of September, 1879, and the jury must find for the defendant upon that paragraph or count.

"*Seventh*—That if the jury believe, from the evidence, that the defendant company, by its president or other officer, did verbally agree to pay the plaintiff's claim, contracted with other parties prior to the incorporation of said company, such verbal agreement or promise is void by the Statute of frauds, as an undertaking to pay the

debt of a third person, and the jury must find accordingly.

"*Eighth*—The jury are instructed that the defendant, the Little Rock and Fort Smith Railway, being an incorporation duly organized under the general incorporation laws of the State of Arkansas, is capable of contracting and being contracted with; and in order to hold the said defendant liable on a contract, it must appear that the contract was made with the said defendant incorporation, and not with the individual members of said incorporation in their private capacity; and in order to hold this incorporation—the defendants in this action—liable for the contracts of the members thereof, made in their individual or private capacity, before said incorporation was organized, it must appear that the said incorporation, after its organization, agreed and promised to carry out and perform said contract.

"*Ninth*—The jury are instructed that they will find the issues in favor of the parties producing the preponderance of proof, and that the *onus probandi*, or burden of proof, is on the plaintiff, and therefore the plaintiff must produce the greater weight of evidence before the jury can find in his favor.

"*Tenth*—The jury, in determining the weight of the evidence, will take into consideration the interest the witnesses have in the suit, as well as their manner of testifying."

The jury found for the plaintiff. The defendant filed a motion for new trial, because: 1st. The verdict was contrary to law and the evidence. 2nd. Not warranted by the allegations of the complaint. 3rd. The defendant taken by surprise in the admission as evidence of a bill of particulars, of which he had no notice. 4th. Error in giving and refusing instructions by the court.

The motion was overruled. The defendant then filed its bill of exceptions, and appealed.

*Clark & Williams*, for appellant:

This case does not come within the principal that a corporation is bound by contracts made with the promoters or getters-up of the company previous to its charter or organization, when such contract is in behalf of the company and inures to its benefit. *Edwards* v. *R. R. Co.*, 1 *Mylne & Craig*, 650; *Vauxhall Bridge Co.*, v. *Earl of Spencer*, *Jacob* 64; *Gooding* v. *R. Co.*, 15 *Eng.*, *L. & Eq.*, 596; *Preston* v. *Railway Co.*, 7 *Eng. L. Eq.*, 124; *Hawks* v. *Railway*, 15 *Eng. L. & Eq.*, 358, *S. C.*; *Whitman* v. *Wyman*, *S. C.*, *U. S.*, 10 *Cent. Law Journal*, 476; *1st Redfield on Railways, sec.* 5, *p* 16. These cases show that to make the corporation liable, a valuable consideration should have passed to the promoters; the contract should be intended to inure to the benfit of the proposed corporation, and that the corporation receive the benefit of the contract. An obvious corollary of this is, that the parties contracting should be the promoters of the corporation sought to be made liable, and that the corporation should be afterwards chartered. But there was already a corporation in existence who owned the road, and the contract was designed to and did inure to the benefit of that company.

Even if the bondholders did make the contract, and did afterwards organize and take possession, the appellant would not be liable, unless such subsequent organization and possession was in some manner the effect of the contract; but Everett could not bind the bondholders by merely assuming to be their agent. See *Carter* v. *Burnham*, 31 *Ark.*, 212; *Campbell* v. *Hastings*, 29 *Ark.*, 512.

The link is wanting to establish that the contract was one *promoting* such organization.

When there is no evidence to sustain a verdict, or when there is some evidence, thought not sufficient to sustain the verdict without a shock to our sense of justice, the court should instruct as in case of non-suit.   We refer to authorities cited in our briefs in *L. R. & F. S. R. Co.* v. *Owen Duffie*, and *same* v. *Parkhurt*, and to *Oliver* v. *The State*, *MS. op.*, *this court*.

The company was incapable, in law, of binding itself to pay the debts of third persons, except by resolutions of its board of directors, or a meeting of stockholders, and a verbal promise of its president was void, as within the Statutes of fraud.   The payment of debts of third persons is *ultra vires.*   *State Bank* v. *U. S. Pottery Co.*, 34, *Vt.*, 144; *Smeed* v. *Indianapolis R. R. Co.*, 11 *Ind.*, 144; *Bank of Genessee* v. *Patchin*, 3 *Kern.*, 13 *N. Y.*, 309; *Angel & Ames on Corp.*, 256, 258.

No copy of the account, *i. e.*, a copy of the items, the particulars of the account, was filed as required by *sec.* 4599 *of Gantt's Digest*, and the defendant was taken by surprise.

Under the common law a plaintiff could not state that defendant was indebted to him in a *running account*, and then be permitted to prove any items he pleased.   Such a complaint is subject to demurrer; evidence under it may be objected to, or judgment arrested.   The rule is the same under our Code.   *Newman Pl. & Pr. pp.* 258, 266, 659; *Clark* v. *Finnell*, 16 *B. Mon.* 355; *Francis* v. *Francis*, 18 *B. Mon.*, 27; *Fible* v. *Caplinger*, 13 *B. Mon.*, 465; *Higgins* v. *Freeman*, 2 *Duer*, 65; *Burnham* v. *DeBoisse*, 8 *How.*, 159; *Hentsch* v. *Porter*, 10 *Cal.*, 555; *Ivany* v. *Carlien*, 30 *Mo.*, 142; *Masters* v. *Freeman*, 17 *Ohio St.* 323.

*U. M. Rose*, for appellee.

The English authorities, without exception, concur in sup-- porting the rule, that the contracts of the projectors of a corporation, when the benefits of them are accepted by the company after its organization, are binding upon the corporation. *Edwards* v. *Grand Junction R. R.*, 1 *Mylne & Craig*, 650; *Preston* v. *Liverpool R. Co.*, 7 *Eng. L. & Eq.*, 124; 1 *Simons N. S.* 586; *Stanley*, 2 *C. & B. R. Co.*, 9 *Simons*, 264; *Webb* v. *D. L. & P. Railway*, 9 *Hare*, 129.

If this cause should have been in Chancery, the error is waived by acquiescence of parties. *Gantt's Digest, secs.* 4461, 4463, *and* 4464; *Talbott* v. *Wilkins*, 31 *Ark.*, 411. Besides the American cases held that the liability exists equally at law and in equity. 1 *Redfield on Railways, p.* 16, *sec.* 5; *Field on Corp. sec.* 221; the leading American case of *Low* v. *C. & P. Rivers R'way*, 45 *N. H.* 375; reported also 1 *Redfield Amer. Railway cases, p.* 1; *Cataivissa R. R. Co.* v. *Titus*, 49 *Penn. St.*, 277.

In *Grape Sugar Co.* v. *Small*, 40 *Md.*, 395, the corporation was held to be estopped from denying its liability, even though it did not appear that the company had authority to make such contract, and in *Whitney* v. *Wyman*, 101 *U. S.* (11 *Otto.*), 392, it was held that where the projectors of a corporation which had no power to do business, being incomplete, purchased machinery, afterwards used by the company, the corporation was liable.

*Hall* v. *Vt. & Mass. R. R.*, 28 *Vt.*, 401, is sometimes cited against us, but is, in reality, strongly in our favor. There the services were rendered gratuitously, merely in expectancy that the building of the road would enhance property, etc., but the company was held liable for services rendered in procuring stock-subscriptions necessary to its

organization. See, also, *Episcopal C. Society* v. *Episcopal Church*, 1 *Pick.*, 371.

The defendant is liable on the contract, though made on its behalf by an unauthorized agent, having ratified it by receiving the benefits.

It is insisted that the president had no right or authority to ratify the contract, but *omnia presumuntur rite et solemniter esse acta*, and it devolved on defendant to prove the want of power. The board of directors must have been informed of the payment by its president, of the $1500.00 to Perry, and since they in no way objected, they ratified his action. *New Hope and D. Bridge Co.* v. *Phœnix Bk.*, 3 *Comst.*, 156 ; *Sherman* v. *Fitch*, 98 *Mass.*, 59.

Where one has actual charge and management of the general business of a corporation, with the knowledge of its directors, the corporation is bound by his contracts, made on its behalf, in the course of the business, without other evidence of actual authority. *Goodwin* v. *Union Screw Co.*, 34 *N. H.*, 378.

Having received the benefit of the contract, the company is estopped to deny that Everett was its agent, and liable. *Field on Corp.*, sec, 194 ; *Foster* v. *LaRue*, 15 *Barb.*, 323 ; *Moss* v. *Rossir L. M. Co.*, 5 *Hill*, 137 ; *Merchants' Bk.* v. *Central Bank*, 1 *Kelly, Ga.*, 428 ; *Abbott* v. *School Dist.*, 7 *Greenl.*, 96 ; *Perry* v. *Simpson W. Co.*, 37 *Conn.*, 534 ; *Gooday* v. *C. & S. V. R. Co.*, 15 *Eng. L. and Eq.*, 598–9.

As to the liability of corporations on contracts of unauthorized agents subsequently ratified, see further, *Hooker* v. *Eagle Bk.*, 30 *N. Y.*, 36 ; *Angel & Ames on Corp.*, sec. 304 ; *Fleckner* v. *Bank U. S.*, 8 *Wheat.*, 363 ; *Hoyt* v. *Thompson*, 19 *N. Y.*, 218–9 ; *Peterson* v. *Mayor*, 17 *N. Y.*, 453–4 ; *Bank U. S.* v. *Dandridge*, 12 *Wheat.*, 64 ; *Hayward* v. *Pilgrim Society*, 21 *Pick.*, 270 ; *Stuart* v. *L.*

& *N. R. R.*, 10 *Eng. L. and Eq.*, 63; *Renter* v. *Elec. Tel Co.*, 37 *Eng. L. and Eq.*, 189; *School Dist.* v. *Richardson*, 23 *Pick.*, 70; *Conso* v. *P. H. I. Co.* 12 *Barb.*, 53.

A new trial will not be granted on the ground of surprise unless the motion is supported by affidavit. *Sec.* 4691 *Gantt's Dig.*; and the party seeking must show surprise "which ordinary prudence could not have guarded against." *Gantt's Dig.*, *sec.* 4688.

Defendant not having moved for a more specific statement of the account, which it could have procured at any time, waived it.

### OPINION.

EAKIN, J.   The complaint is intended to set forth a cause of action at law, for services rendered, material furnished, money expended, etc., by Perry, for and in behalf of the defendant railway company, for which it afterwards promised to pay.   The promise is the gist of the action, and its denial makes an issue exclusively cognizable at law.   The history and circumstances of the transaction are set forth in the first paragraph of the complaint, not as grounds upon which the plaintiff directly seeks equitable relief, but, rather, to show the consideration of the promise, the inducement thereto, and the facts from which a promise might be implied.   It cannot be said, from the face of the complaint, that the plaintiff "should have adopted proceedings in equity," which would have authorized the defendant, under *sec.* 4464 of *Gantt's Digest* (second clause), to move for a transfer.   Nothing was waived by failure to make such motion, and the defendant has the right to insist that the plaintiff shall stand on the ground he has chosen, and succeed upon such principles alone as are cognizable at law.

Little Rock and Ft. Smith R. R. Co. v. Perry.

Perhaps the most perplexing questions, and least satis- 1. PLEAD-ING AND PRACTICE: factory decisions (not always in harmony with each other), which have sprung from the inauguration of the so-called system of American procedure, regard the kind and measure of relief which may be afforded in cases where the proof elicted under one mode of proceeding, reveals matter relievable under the other. This is especially the case in the few States which, like Kentucky and Arkansas, have adopted the Code system generally, with the interpolation of an effort still to preserve the distinction between proceedings at law and in equity. It is very hard to do that without separate Courts of Chancery, in the face of an express provision that an error as to the kind of proceedings shall not cause an abatement or dismissal of the action. Still, it is the duty of the courts to make the effort, and preserve the distinction, so far as they may be able, in harmony with all parts of the Code.

The decisions in those States are, as yet, few, and no set Equitable relief in actions at law. of rules can be formulated from them, entirely satisfactory to the profession ; but in our State it is now settled that relief of a purely equitable nature cannot be given in an action properly begun and prosecuted at law. This has been illustrated in a striking manner, with regard to mortgages of property, not in *esse.* They have been treated in actions at law as wholly void, but have been sustained in equitable proceedings. See *Apperson* v. *Moore,* 30 *Ark.,* 56 ; *Tomlinson* v. *Greenfield,* 31 *Ark.,* 557 ; *Roberts* v. *Jacks, Ib.,* 597 The case of *Talbot et al* v. *Wilkins et al,* 31st *Ark.,* 411, is not in conflict with this ruling. The Court expressly held that the case being at law to enforce subrogation, a purely equitable right, the defendants might have moved to have the action changed to equitable proceedings, and that the error was waived by neglect to do so. This does not apply to a case properly brought at law, in which no such

motion could be sustained.    It is unreasonable that a defend-
ant should be held  to a  court of  law by the allegations of
the  complaint and be  there subjected to  the administration
of principles purely equitable ; but if he has an opportunity
to have the change  effected and  neglects it, he  should not
complain.    Even this practice has not, in all  cases, been al-
lowed ; but the rule has been so modified as  to prevent par-
ties, by  consent, from  indulging  in  such  proceedings as
would, if common, entirely obliterate the distinction between
law and equity ;  and  a *special proceeding* at  law, founded
upon common law or statute, cannot be made, even  without
objection, to subserve the  purposes of a bill  in equity.    In
such  plain and palpable cases of  perversion of  remedies, it
is the duty of  the Circuit  Judge to  interfere and refuse re-
lief, unless the complainant shall approach the court in pro-
per fashion.    Thus it was held in *Crawford, Auditor*, v. *Car-
son ( Ex.) et al*, 35 *Ib.*, *Ark.* 565, which was an effort to make
the writ of mandamus serve the purposes  of an injunction,
that " it is the duty of the Courts in clear  cases, where the
entertainment of a writ in  the form  presented, would lead
to  a confusion of  the boundaries between proceedings at
law and in equity, *and  between ordinary  actions and special
proceedings*, to refuse of their own motion  to  do so."

2.  Trans-
fer  of
c a u s e
from  l a w
to  equity
docket.

That case rested upon its peculiar nature.    In ordinary civil
actions it may now be considered as the settled rule of this
court  to be observed hereafter, that actions of a  purely
equitable nature and so appearing by the  complaint, when
brought at law, *may*  be transferred to the  equity side on
motion of either party, or by  the court on its  own motion,
by virtue of its inherent power over its proceedings and that
the courts should be free  in  the exercise of  that power to
sustain the legislative intent in  retaining the  distinction,
amidst the wreck of all forms of action ; but that the

Little Rock and Ft. Smith R. R. Co. v. Perry.

failure to do so, without a motion by parties for the purpose, is not error for reversal.

With regard to actions begun in Chancery, which upon their face appear to be exclusively and wholly cognizable at law, as, for instance, a bill to obtain judgment upon a note, or an ejectment bill without equitable elements, the rule is the same. It is always, however, to be borne in mind that if there be any equitable element to which the jurisdiction of a Court of Chancery may attach, then by the old doctrine, the court in the same proceedings may administer all legal relief connected with the subject matter and essential to do full and complete justice at once to all parties before it.

3. Legal relief, when administered in equity.

But when, as in this case, the action is purely legal upon its face, and properly brought at law, it must be decided on legal principles alone. It follows that the plaintiff cannot be sustained in his judgment, unless he has shown, by evidence, either an express promise of the defendant Railway Company, valid in law, to pay his claim, or circumstances from which, according to *legal* principles, a promise may be implied.

No equity at law in legal actions.

The plaintiff relied, and the court below seems to have acted upon, a principle which grew up in the English Courts of Equity, as an Equity doctrine; and which, like the vendor's lien, contravening the strict rules of law, was adopted, *ex aequo et bono*, to prevent fraud and imposition, and do substantial justice. It amounted to this: That where the formation of a corporation was in contemplation, and the promoters of the corporation were taking initiatory steps to perfect its organization, and obtain a charter, and provide in advance the means necessary for its successful operation, all contracts made by such promoters, for the benefit of the future corporation, and which were reasonable and proper to put it in operation, and the benefits of which were after-

4. R. R. COMPANIES: When bound by contracts of projectors.

wards accepted by the corporation, became binding on the corporation without any formal contract to pay.

A brief notice of some of the cases cited by the attorney for the appellee, will render the nature and scope of the doctrine more intelligible.

The leading case is that of *Edwards* v. *The Grand Junction Railway Company*; 1st *Mglne & Craig*, 650. The promoters of the Railway had a bill pending in Parliament for their incorporation, which had passed the Commons and gone to the House of Lords. In the latter house, the Trustees of a certain Turnpike road, whose line would be crossed, had prepared and were about to present a petition in opposition to the bill. After some negotiations between the committees on behalf of the projectors, and the Trustees of the Turnpike, it was agreed between them that the latter should withdraw their opposition to the bill, in consideration that the railroad crossing should be carried under the turnpike by constructing a bridge for the road of a certain agreed width and structure. It was desired by the turnpike trustees that these conditions should be made provisions of the charter, but as the amendment would have involved new delays in the then advanced state of the bill, the trustees were induced to waive this demand, by the written undertaking of one of the promoters in behalf of all, to execute an agreement to the effect of the desired clauses, and to have the same confirmed by the company, as soon as circumstances should permit. The bill was allowed to pass, which provided for crossings of any Turnpike roads by bridges of a less width. The Railway Company was proceeding to construct a bridge at the crossing of the turnpike of complainants as authorized by the charter, but of less width than had been stipulated in the compromise. The Turnpike trustees applied for an injunction which was granted. Upon a motion before the Lord Chancellor to dis-

solve, he held in effect, that conceding there was no legal liability on the company, on account of a contract made before its existence, yet there was an equity binding it not to use its chartered power, obtained through and by means of such an agreement with the proprietors, who were pressing the bill in violation of its terms. The injunction was continued. This is a case where the agreement was made expressly for the benefit of the company, and under a pledge that the company when organized would carry it into effect.

The case of *Stanley* v. *Birkenhead Railway Co.*, 9 *Simons*, 264 (reported in 16 *Eng. Ch. Rep'ts.*, 264) was one in which the projectors of a railroad, seeking a charter and fixing their line, agreed with a landed proprietor, on behalf of the proposed company, in consideration that he would withdraw his opposition to their bill, to pay him 20,000*l* for the portion of his estate required by the road.

A bill for specific performance was brought against the company, after its complete organization, or, rather, against the company whose projectors had expressly adopted the agreement, and there was a demurrer for want of equity. The vice-Chancellor held that the case was a very simple one ; that the company was bound by the equity ; and overruled the demurrer. In this case, as in the former, it appears that there was an existing organization for the purpose of promoting the railroad, and that the contract was made in the course of preliminary proceedings, necessary to obtain the franchises, and put the road into operation.

The cases of *Preston* v. *The Liverpool, Manchester, etc., Railway Co.*, 7 *Eng. L. & Eq.*, 124 ; and *Webb* v. *The Direct London and Portsmouth Railway Company*, 9 *Hare.*, 129, are of similar import. Whilst the equity is, in all of them, readily acknowledged, under the circumstances, they are all cases where the projectors were acting under a preliminary organization to obtain charters and perfect the

scheme, and the contracts, though made with the projectors, were properly *on behalf of* the intended companies, and with the view entertained by both parties, at the time, of having them adopted by the companies, when perfected and empowered to do so.    The equity is based upon the ground that, under such circumstances, it would be a fraud upon the vendor, or the person withdrawing an opposition, if the company, which had been thus pledged in advance by its creators, and obtained its franchises, through such pledges, should be allowed to violate them.    None of the cases go to the extent of holding that any and all contracts made with the projectors of a road, upon their *individual* responsibility, and without any mutual expectation that they would form a company, which would assume the contract, would nevertheless be binding on a company, if the persons bound should afterwards organize themselves into a corporation, and put into it the property acquired, or the results of the services rendered,    Such a ruling would destroy all distinction between the liabilities of corporations, and those of its individual members, and it may be added, that so wide and sweeping an equity would be very apt to deter any new subscriptions of stock under any charter.    Of course there is no question but that *liens* upon property, in the hands of individuals, would be followed into the hands of a corporation which they might organize, and enforced against it, but that is not now the question.

The rule    The rule has been freely adopted in the American courts,
as formu-
lated by upon the English authorities, and with the same limitations.
Redfield.
The rule is thus defined by Mr. Redfield, in his work on the *Law of Railways*, *vol.* 1., *p.* 16:    "Whenever a third party enters into a contract with the promoters of a railway, which is intended to inure to the benefit of the company, and they take the benefit of the contract, they will be bound to perform it, upon the familiar principle that one

Little Rock and Ft. Smith R. R. Co. v. Perry.

who adopts the benefit of an act, which another volunteers to perform in his name, and on his behalf, is bound to take the burden with the benefit." This is a very well formulated expression of the rule, and on all points carefully guarded to conform with the decided cases, and limit its scope. It has also, in some cases, been held in America, that a corporation is liable at law, upon an implied *assumpsit*, for services rendered before it came *in esse*, but which were necessary to perfect its organization, and which, after such organization was perfected, it accepted, and the benefits of which it enjoyed. See *Low* v. *Ct. & Passumpric Railway*, 45 *N. H.*, 375, which was a suit for services rendered in procuring stock-subscriptions. This is certainly reasonable, with regard to services rendered for the direct object of perfecting the organization.

From all the authorities, it seems clear that, in order to recover, in an action at law, the plaintiff must show either an express promise of the new company, or, that the contract was made with persons then engaged in its formation, and taking preliminary steps thereto, and that the contract was made on behalf of the new company, in the expectation on the part of plaintiff, and with the assurance on the part of the projectors, that it would become a corporate debt, and that the company afterwards entered upon and enjoyed the benefit of the contract, and by no other title than that derived through it. From these circumstances an affirmance would be implied. Whether equities might arise under other circumstances, is a matter to be considered when duly presented in a Chancery case. No authorities have gone the length of holding that any contract made with individuals, exclusively upon individual credit, will become the contract of any future corporation they may form, for the more convenient management and use of the benefits of it.

The verdict in this case seems justified, under the instruc-

5. CORPORATION: When bound for services rendered before its existence.

tions, and saves comment on the evidence. We will consider the instructions in the light of the principles above announced.

The first and second instructions given for the plaintiff were given against the objections of the defendant. It is apparent that the first widens the liability of defendant much beyond the adjudged cases, and beyond any safe principle. It cannot be contended upon any authority, for instance, that if a number of gentlemen, with a view, amongst themselves, of organizing a corporation in the future, should buy property, and have labor done upon it, upon their individual responsibility, and should afterwards form a company and take stock for their respective shares, the vendor or laborers would thereby, in the absence of a lien, have the legal right, by virtue of a supposed *assumpsit*, to impose the obligation of payment on the artificial person, the corporation. This would be unreasonable. The corporation having given stock for the property, as well as stock to other subscribers (if any), for money paid in, would have the right to proceed unincumbered. It stands distinct from the component members, a person of itself. The creditors having no liens would have suffered no injury. They are left with the legal rights against the individuals upon which they at first reposed, and in enforcing them, may, by proper process, even reach the stock given for the property. Other elements are necessary in this action. It should appear that the view of future organization was mutual between the contracting parties, and that the labor, material, etc., were furnished, at the time, on behalf of the future company, with the view, authorized by the assurances of the projectors, that the company, when chartered, would assume the debt, as created in its behalf. In such case only would the acceptance of benefits of the contract amount to a ratification, and

implied promises at law, although there still might arise an obligation on a promise expressed and accepted.

The first instruction was erroneous and misleading. The second does not appear objectionable.

All the instructions asked by defendant were refused except the first and tenth. The first referred to the debts of the old company, and had little application ; as the evidence is positive that the credit was not given to it, but exclusively to the bondholders. The tenth is a general truism.

The second should have been given. It is a clear statement of the law, considering that the contract may be expressed or implied.

The third and fourth would have been misleading, and were properly refused. Corporations may incur legal liabilities from conduct, as above indicated.

The fifth would have been improper. Whether evidence tends to prove an issue may, on objection, be determined by the court when offered. After it has gone to the jury, unless wholly irrelevant, it is the province of the jury to weigh it and determine how far it, with other circumstances, conduces to prove the issue.

6. EVIDENCE: Competency of, when and by whom determined.

The sixth has been held improper by this court, under our Constitution, and we adhere to the former rulings. If there is any evidence whatever, however slight, pertinent to the issue, it should not be taken from the jury, even if the court is satisfied that it would grant a new trial, if a verdict were found upon it. The learned counsel for the appellant press this point in their brief with much force, upon the practice at common law, in the Federal Courts, and in the courts of other States. We think the positive injunctions of the State Constitution, however, settle the matter here : ''Judges shall *not* charge juries with regard to matter of fact, but shall declare the law.'' *Art.* VII., *sec.* 23. If the juries abuse this power, there may be a new

7. PRACTICE: Directing jury what verdict to find, forbidden by constitution.

13—37

trial; but that is quite different in its consequences, from a direction for a verdict.

**8. STATUTE OF FRAUDS: Promise of corporation to pay debt contracted before its organization. (7th instruction.)**  The seventh would have been misleading, perhaps, although literally correct, as an abstract proposition. Under the circumstances, it might have diverted the attention of the jury from the possible implied contract by conduct, and by use of the benefits of a contract. The refusal was not error. It would, have been better, however, to have qualified it by the insertion of "if there be no other sufficient evidence of an implied or express promise," or words to that effect.

**9. Corporation not bound by contracts of its members. (8th instruction)**  The eighth, although strictly correct, was subject to the same qualification, and might, as worded, have misled. It tended to divert the minds of the jury from the obligation of the company, which might attach, from circumstances as explained above, and might have led them to suppose that an express *assumpsit* was necessary. It would have been better to have inserted, or added, "either by express promise, or one to be implied in law."

**10. VERDICT: Preponderance of testimony**  The ninth instruction asked was clearly proper, and its refusal erroneous. It is certainly the duty of the party having the *onus* to produce a preponderance of proof; otherwise, matters should stand as they are. The degree of preponderance is immaterial, but there must be *some*, of which the jury should judge.

**11. EVIDENCE: Bill of particulars when not filed as exhibit.**  There was no error in refusing a new trial on the ground of surprise. The defendant might have called for a bill of particulars.

**12. PRACTICE IN SUPREME COURT: Judgment on two counts, when erroneous as to one.**  As to the second count in the complaint, no error is claimed, but the judgment being in *solido*, must be reversed.

On the return of the cause, the plaintiff, if so advised, may proceed upon the second count alone, and dismiss as to the first, with a view of filing a bill in equity as to the

matters therein, or he may have a new trial on the whole at law.

Reverse for the errors indicated, in overruling the motion for a new trial, and remand the cause for further proceedings, in accordance with law and this opinion.