## CHARLESTON.

R. L. RAMSEY *v.* BROOKE COUNTY BUILDING & LOAN ASSN.

(No. 5729)

Submitted September 7, 1926.   Decided September 14, 1926.

1. CORPORATIONS—*Generally Corporation is Not Liable for Contracts Made on Its Behalf by Promoters and Not Subsequently Ratified and Confirmed; if Promoters Employ Attorney to Prepare and Secure Necessary Charter and Constitution and By-Laws and to Assist in Organization of Corporation, and His Services Are Accepted, Law Implies Contract by Corporation to Pay Him Reasonable Compensation.*

   Generally a corporation is not liable for contracts made on its behalf by its promoters and not subsequently ratified and confirmed in the exercise of its corporate powers; but when an attorney is employed by such promoters to prepare and secure the necessary charter and a constitution and by-laws for the government of the corporation, and to be present and assist in the organization, and his professional services are thus accepted and appropriated, the law implies a contract on the part of the corporation to pay him a reasonable compensation therefor, on which he may maintain an action. (p. 124.)

2. NOVATION—*Contract by Corporation With Third Person to Sell Stock on Commission, in Which He Agrees to Bear Ex-*

*penses From Certain Period, to Which Attorney is Not
Party, is Not "Novation" of Contract Implied by Law to
Pay Attorney Reasonable Compensation for Assisting in
Organizing Corporation, Rendering Such Third Party
Liable to Attorney.*

And the fact that subsequent to the organization of a corporation it makes a contract with a third person to sell shares of its stock on a commission to be paid him, in consideration whereof he agrees "to bear all expenses, salaries of officers, provide all printed matter, books of record, pass books, cards and files, et cetera," for a specific period, but to which such attorney is not a party, will not work a novation of the contract so as to absolve the corporation from its liability to him and render such third party liable to the attorney for his services.    (p. 125.)

3. ATTORNEY AND CLIENT—*On Election to Office of Attorney of
    Association, to Which no Salary is Attached, Law Implies
    Contract to Pay Reasonable Compensation and That Emoluments Pertain to Office Will be Paid, in Default of Which
    Association is Liable to Attorney.*

When a building and loan association elects one to the office of attorney as provided by its constitution and by-laws, and he accepts the office, to which no salary is attached, but upon the terms prescribed by the by-laws, that he is to represent the association in all legal matters, be present at all meetings of the stockholders and directors when required, and to examine and certify titles to the land offered as security for loans, prepare deeds of trust or mortages and report on the same, the by-laws providing that the legal expenses attending such loans shall be borne by the borrowers, the law implies a contract on the part of such corporation to pay a reasonable compensation for the services rendered it, and that the business pertaining to such loans will be referred to him, and the fees and emoluments pertaining to his office chargeable to such borrowers will be collected and turned over to him, in default of which the corporation is liable to such attorney for damages sustained by its breach of duty in the premises.    (p. 126.)

4. CONTRACTS—*Where Party to Contract Omits or Refuses to
    Perform and Renders it Impossible for Other Party to
    Perform, Party in Default is Liable for Damages.*

Where one of the parties to a contract omits or refuses to perform it on his part, and renders it impossible for the other

party to perform it on his part, the party in default is liable to the other for the damages sustained by him by such breach. (p. 126.)

Error to Circuit Court, Brooke County.

Action by R. L. Ramsey against the Brooke County Building & Loan Association. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Frank A. Chapman* and *Patrick J. McGuire,* for plaintiff in error.

*W. S. Wilkin,* for defendant in error.

MILLER, JUDGE:

Plaintiff, an attorney at law, sued defendant for alleged professional services rendered prior and subsequent to its organization, and for the value of services which, as its attorney elect, he was entitled to render, but which by the wrongful conduct of its officers and directors he was prevented from performing subsequent to such organization.

On the trial below, on a plea of non assumpsit, plaintiff recovered a verdict and judgment for $850.00, to reverse which, for alleged errors committed therein, the defendant was granted the present writ of error.

In his bill of particulars filed, two specific items on which plaintiff based his right of action were presented, viz:

1. For legal services rendered as attorney for Brooke County Building and Loan Assn., from February 1, 1924, to December 31, 1924, for organization of the company, obtaining its charter and the four amendments thereto, drawing the by-laws, and for other services as such attorney, $700.00.

2. For failure and neglect of the defendant to procure plaintiff to make abstracts of title and deeds of trust and mortgages in fifty loans made by defendant to borrowers and owners of real estate, as provided in his contract of employment, between the ............ day of February, 1924, and the ............ day of December, 1925, by which he was damaged, $500.00.

But there was credited on this account of $1,200.00, two items as follows: May 1, 1924, $50.00; July 12, 1924, $50.00; total, $100.00; leaving a balance of $1,100.00. But the damages laid in the declaration was $1,000.00.

Plaintiff, by his own and the testimony of two other law-yers competent to give evidence on the value of such services as were rendered, fully supports his claim; and there was no attempt by the defendant to controvert the amount or the value of these services, but only that defendant was liable therefor. The main defense to the first item was that one W. V. Smith, one of the promoters of the corporation, and who had in fact made payment to plaintiff of the two items of credit, and for the reasons presently to be presented, and not the defendant, was liable to plaintiff for all services covered by the first item of the account; and as to the second item, that as plaintiff had not performed the services, he was not, under the terms of his election or employment as general attorney, entitled to pay for the services not rendered.

The record shows that the charter, previously applied for, was obtained in February, 1924, shortly after which the organization was perfected, by acceptance of the charter and the adoption of by-laws by the stockholders, and the election of a board of directors, and by the subsequent election or appointment by them of the constitutional officers, including the plaintiff as attorney, for the ensuing year as provided therein.

It is conceded that plaintiff prepared the contract, procured the charter, prepared all the preliminary papers, including notices to stockholders, and also that after a study and investigation preparatory thereto, he had drafted the constitution and by-laws subsequently adopted in stockholders meeting, introduced in evidence, and covering some eighteen pages of the printed record; and as already noted, there was no controversy as to the amount or value of these services. And after the organization of the company was thus effected, the evidence shows that plaintiff, in accordance with the duties imposed upon him by the fifth section of the by-laws so adopted, was present when required at all meetings of the stockholders and directors and freely gave his counsel and advice pertaining to all legal matters, including the procure-

ment of five several amendments of the charter increasing the capital stock from $50,000.00 to $3,000,000.00,. as finally agreed upon.

In support of the second item of account, covering damages for breach of the contract of employment, as of the first item thereof, plaintiff rested his case, first, on the provisions of said section five of the by-laws, defining and prescribing his rights and duties, substantially as follows: He shall attend all meetings of the stockholders and directors when asked by the president or secretary of the board; make all examinations of titles of the property offered to the association as security for loans, as the board of directors may require, and make a written report of the same; represent the association in all legal proceedings, and shall be the legal adviser of the association, draw up all contracts and legal documents that the board may require, and pass on all contracts entered into by the association or its officers, and perform such other services as the board may require. This second item is apparently limited to the alleged failure of the defendant to submit to plaintiff the business relating to making abstracts of title and deeds of trust and mortgages, between the dates mentioned, numbering fifty in all. Defendant interposes the objection that it was not bound by the terms of the by-laws to submit these subjects to plaintiff, but only according to the pleasure of the board, and that it was privileged for good reason, or without reason, to employ any other person therein. And Buchanan, director and secretary, excuses the neglect of the defendant, which he shows was his official neglect to submit these matters to plaintiff; first, that it was difficult to find him at his office many times; second, that he did not give the matters when submitted his personal attention, but referred them to his law partner Wilkin, or the clerk in their office. The testimony of Buchanan is not very satisfactory on this subject. It is in evidence that he was interested in an abstract company, and that he referred to that company, or to himself representing it, some of this business, perhaps all of it not referred to plaintiff, and that that company was given the benefit thereof. On the other hand Ramsey and Wilkin and their clerk testified that Ramsey was generally at his

office during business hours, and that all the work submitted was, and what was not referred to him would have been, properly attended to, either by himself or his partner, and properly certified, and himself held responsible for what was done; and it is admitted by Buchanan and others, directors examined, that as to all other legal services required, the drafts of notices of meetings, contracts, resolutions, and other business coming before the board, plaintiff was fully consulted and gave his advice and services during the year of his term of service, and that they had no trouble in locating him and procuring his attendance when required. And for all these services, except the two payments made by Smith, they seek to deprive him of all compensation, as well as for the services they denied him.

We are aided very little by the briefs and arguments of counsel on the real questions presented by the record, as we conceive them. First, is the defendant liable for the services of counsel rendered in procuring the charter, attending meetings of stockholders and directors, and in the preparation of the constitution and by-laws, such as were rendered by plaintiff, and shown by the record? In the promotion of a corporation, these preliminary services are of course necessary and all important, and there can be no doubt that the promoters, if they employ counsel, are themselves liable therefor personally; but does the corporation itself, in its corporate entity, when its organization is completed and it has adopted or appropriated the work and services of one thus employed, become liable for the reasonable value thereof? We think it is generally so understood, and that corporations so organized do in actual practice assume and pay all the reasonable incorporation expenses, so as to impose the burden on all stockholders alike, and not wholly upon those who promote the organization. It seems to be well settled that a corporation is not bound by contracts made by the promoters on its behalf, unless after organization it ratifies the same. 7 R. C. L. § 59, p. 80, and notes. In England, according to some early cases, contracts of promoters though relating to the organization, and thereafter accepted, became the obligations of the corporation. See a collation of the cases in note to *Oakes* v. *Cat-*

*taraugas Water Company,* 143 N. Y. 430, reported and annotated in 26 L. R. A. 544.  But this general rule then proving unsatisfactory was modified, and various distinctions were made in subsequent English cases, as the same note shows. The apparent exception to the modified English rule and recognized and followed in a number of our American cases is that when the contract of the promoters relates to the formation of the corporation, obtaining its charter and its subsequent organization, the corporation is liable upon an implied contract for the necessary expenses incurred therein, and which inure to its benefit.  Among the cases we will cite are, *Little Rock & Ft. Smith R. R. Co.* v. *Perry,* 37 Ark. 164; *Farmers' Bank of Vine Grove* v. *Smith,* 105 Ky. 816; 88 Am. St. Rep. 341; *Low* v. *Connecticut & Passumpsic Rivers R. R. Co.,* 45 N. H. 370; *Bell's Gap R. R. Co.* v. *Christy,* 79 Pa. St. 54, 21 Am. Rep. 39.  These cases are directly in point on the very proposition relied on here and covered by plaintiff's instructions to the jury as given by the court, and we think are sound in principle.  The rule is based on the familiar principle, that one who knowingly accepts the benefits of the labor or services of another or of a contract made in his behalf is bound in law and morals to pay the one rendering the services reasonable compensation therefor.

The next question is, was there a novation of the debt or liability of the defendant binding the plaintiff by the agreement entered into with Smith, approved by the state bank examiner?  It is conceded that while Ramsey knew of the agreement, he was no party to it, and did not in terms accept Smith as his obligor in the place of the defendant corporation. The proposition of Smith was made to the defendant March 21, 1924, ten days after the organization of the defendant. Its purpose was to enable Smith to obtain a commission of five per cent on all stock sold by him.  For this concession he proposed to "bear all expenses, salaries of officers, provide all printed matter, books of record, pass books, cards and files, *et cetera,* that will be necessary to establish a complete up-to-date Building and Loan Association equipment, including rents and salaries here mentioned, to be for a period of six months."  It does not appear to what extent he complied with

this proposition. At all events the plaintiff was not a salaried officer, and the proposition did not in terms include organization expenses, nor expenses of obtaining enlarged charter powers. Manifestly, he did not become bound thereby in terms to pay plaintiff for his services covered by the first item of his account, and he was cautious in his testimony not to admit such liability. The nearest he approached such admission is in the exhibition of the two checks of $50.00 each credited on plaintiff's account. On these checks he procured plaintiff's endorsement, deposited them to defendant's account in bank, and plaintiff says he was given credit therefor on his stock subscription. There is nothing in the record, however, showing novation of the debt to plaintiff, by which defendant was released and Smith became bound to plaintiff therefor. "Novation is the substitution of one debtor by mutual agreement for another, whereby the old debt is extinguished." *Beckwith* v. *National Building Association,* 59 W. Va. 643; *Stuckey* v. *Middle States Loan, Building and Const. Co.,* 61 W. Va. 74, 77. If Smith is bound by his contract to pay defendant what it owes plaintiff, a question we do not decide, it still has its right of action against him therefor. Certainly plaintiff has no right of action against him for the amount recovered against defendant, or any part thereof. Such contract with defendant was primarily for its protection, not for the benefit of plaintiff. And certainly no provision of Smith's contract covers the fees or emoluments belonging to plaintiff's office of attorney accruing from certifying titles and making deeds of trust, etc. These, by section 34 of the constitution and by-laws, became the obligation of the borrowers, and not of the building association. It does not specifically appear what the fact is, but presumably defendant charged against the amount of the loans made to borrowers the fees of attorneys or abstractors employed to examine titles and make deeds of trust and mortgages taken to secure loans, and misapplied them to the accounts of such abstractors or attorneys as were substituted for plaintiff.

Is defendant then liable to plaintiff for these perquisites of his office or employment? We emphasize the fact that plaintiff rendered other services for defendant than making

certificates of title and deeds of trust, committed to others, for which nothing was ever paid him, so far as the record shows. For these official services, no salary having been provided, he was entitled to reasonable compensation.  His relationship to the defendant precluded him from accepting employment from any one having adverse interests to the defendant, and defendant was bound to treat him with fairness and due consideration.  One of the general principles applicable to contracts of employment is that when one of the parties to the contract makes it impossible for the other party to perform it on his part, he can treat the default of the other party which he has caused as discharging himself from liability. 5 Page on Contracts (2nd ed), §§ 2922, 2923, and illustrative cases cited.  We think this principle should control our disposition of this case.  We have employed it in a number of cases involving the employment of teachers in our public schools, discharged without good cause by boards of education.  *Robinson* v. *Board of Education,* 70 W. Va. 66; *Jameson* v. *Board of Education,* 74 W. Va. 389.  Also in the cases involving employees of railway companies wrongfully discharged.  *Rhodes* v. *Chesapeake & Ohio Ry. Co.,* 49 W. Va. 494.  Likewise in cases involving the wrongful discharge of an employee of a banking corporation.  *Munn* v. *Wellsburg Banking & Trust Co.,* 66 W. Va. 204; and many other kindred and similar cases, as in an action by a real estate broker for commissions which the seller prevented the broker from earning under the contract breached by the seller, which might be cited.  How much the jury may have included in their verdict for loss of fees and emoluments by the breach of the defendant to refer these transactions to him does not appear, but evidently something for the damages sustained by plaintiff thereby was covered by the verdict.  The first item was broad enough perhaps to cover the value of a retainer for the period of employment, for attending stockholders and directors' meetings during that period.  Plaintiff introduced some evidence on that subject, though not specifically itemized in his account.

The plaintiff's instructions to the jury given by the court correctly propounded the law applicable to the case, as herein

announced; those of the defendant rejected did not do so. Wherefore we find no substantial error in the judgment, and the same will be affirmed.

*Affirmed.*