AMASA HUTCHINSON *versus* WILLIAM HUTCHINSON.

When an agent takes a promissory note for his principal, payable to himself, and then transfers it to his principal, such principal stands in the position of the original holder, and the note in his hands is subject to whatever defences might have been made to it in the hands of the agent.

A parol contract to support one during life, is not within the statute of frauds. Such a contract is a sufficient consideration for a deed of real estate. And, if the grantee in such deed, give his promissory notes for the value of the property, to be held as collateral security for the performance of his contract, he is not liable upon the notes, except to an innocent purchaser for a valuable consideration, unless he fails to perform.

REPORTED by RICE, J., August Term, 1857.

This was an action of ASSUMPSIT, upon two promissory notes, dated October 13, 1855, each for the sum of one hundred dollars, one of them payable in one year, and the other in two years.

These notes were payable to Charles Hutchinson, or order, and were by him indorsed to the plaintiff, before maturity. When Charles Hutchinson received the notes, he gave the defendant a deed of the homestead farm, on which his father and mother were living. The plaintiff, also, had lived on the farm the most of the time, and was then forty-five years old. There was an incumbrance upon the farm, when it was deeded to the defendant, which he afterwards paid off and extinguished.

The defendant claimed, and testified, that the farm was held for the benefit of his father, and was conveyed to him by Charles, in consideration of his agreement to support his

father and mother; and that the notes were given as collateral security for his agreement, and were left in his brother's hands for that purpose, to be collected if he failed to perform it, and not otherwise; and that the plaintiff, though he had lived at home, had been out of health and had no interest in the farm. There was other corroborative testimony.

Charles Hutchinson testified, that the plaintiff had always lived at home, and, though sometimes out of health, had worked on the farm and helped support his father and mother; that the plaintiff, therefore, had an equitable interest in the farm, for which the notes were given, though the plaintiff himself was not a party to the transaction; that there was no agreement that the notes should be held merely as security for the contract of the defendant to support his father and mother; that, having taken the notes for the benefit of his father, when the plaintiff complained to him for conveying the property to the defendant, he transferred the notes to the plaintiff.

There was other testimony for the plaintiff, but all the facts, necessary to an understanding of the case, appear in the opinion of the Court.

*Danforth,* for the defendant, contended that the notes were given as collateral security for the agreement of the defendant to support his father and mother, to be paid only upon his failure to support them; that the notes were fraudulently put in circulation by Charles Hutchinson; and that the plaintiff, though he received them before maturity, having paid nothing for them, was not entitled to recover.

*Vose,* for the plaintiff, made the following points:—

1. That the testimony, that there was an agreement that the notes should not be paid, according to their tenor, being contradictory to the written contract, was not admissible.

2. That the notes having been transferred to the plaintiff, before maturity, even if there was an agreement between the original parties, that they should be held as collateral security only, the plaintiff, having no notice of any such agreement,

was entitled to recover. *Sweetser* v. *French,* 2 Cush. 313; *Fisher* v. *Leland,* 4 Cush. 458.

The opinion of the Court was delivered by

DAVIS, J. — The plaintiff had lived with his father and mother for many years. There had probably been some expectation that he should support them during their lives, and take the homestead farm at their decease. But if this was the case, he gave it up in 1853, and left the place.

The title to the homestead was in Harvey, a brother of the parties, probably for the purpose of keeping it from the creditors of the father. Harvey conveyed it to Charles, another brother. · But there can be no doubt, from the testimony, that the equitable estate was in the father during the whole time.

As Charles declined to take care of his father and mother, William, the defendant, agreed to do it, and Charles gave him a deed of the property. William, at the same time, gave Charles the notes in suit; and afterwards Charles, because the plaintiff complained that he had deeded property to William in which he had an interest, indorsed the notes, not then due, to him.

The plaintiff now contends that, whatever defence might have been made to the notes in the hands of Charles, none can be made against them in his hands, as they were ·indorsed to him before maturity. But, according to his own testimony, he does not stand in the position of an innocent indorsee, for a good consideration. He does not claim to have *purchased* the notes of Charles. No consideration whatever passed from him to Charles at the time of the transfer. According to the plaintiff's testimony, Charles, in conveying the property and taking the notes, acted as his agent, without authority, — but he afterwards ratified his acts by taking the notes himself, not upon any new consideration, but as belonging to him by the original transaction. When an agent takes a note for his principal, payable to himself, and then transfers it to his principal, such principal stands in the position of an original holder, and the note in his hands is subject to whatever

defences might have been made to it in the hands of the agent.

But it is argued that the evidence in defence is inadmissible, because it contradicts the notes. And so it does. And the evidence is clearly inadmissible, except to prove that the notes were given without consideration. As the plaintiff paid Charles nothing for them, they are subject to the same defence that could have been made to them in his (Charles') hands. Could *he* have recovered upon them? Was any consideration given for the notes?

According to the testimony of Woods, the consideration for the deed was the agreement of the defendant to support his father and mother. This agreement was probably a parol contract only, though the case does not state that it was not in writing. But if a parol agreement, it was binding, nevertheless, and was a sufficient consideration for the deed. A parol contract to support one during life, is not within the statute of frauds; for he may die within the year. *Peters* v. *Westborough*, 19 Pick. 364. The contract between the parties, therefore, was complete, before the notes were given. They were consequently, if this view of the case is correct, given without any consideration, under a misapprehension that any security from the defendant, besides his promise, was necessary. And, after the defendant has thus far performed his part of the contract, it would be manifest injustice to compel him to pay the notes, if they were thus given without any consideration. But the plaintiff denies this, and contends that the notes were given for his interest in the premises.

On this branch of the case, the testimony is conflicting, and it is somewhat difficult to determine definitely what the transaction was. The defendant testifies that the notes were given as security for his agreement to support his parents, and were not to be paid, unless he failed to perform. Noah Woods, who made the writings between the parties, confirms this testimony. The only other person present at the time was Charles. He does not concur with the defendant and Woods. But he testifies that the notes were given for the

benefit of his father. If so, they could not have been de-
signed for the benefit of Charles, nor of the plaintiff. If de-
signed for the father, they must have been intended as security
for his support. The notes appear to have amounted to
nearly or quite the value of the farm, after deducting the in-
cumbrance then existing upon it, which the defendant after-
wards paid. So that, if the notes were intended to be paid
absolutely, the defendant would have received nothing for his
contract to support his father and mother. On the whole, we
think the testimony clearly preponderates in favor of the con-
clusion that the notes were given as collateral only, without
consideration, and were not to be paid unless the defendant
failed to perform his contract.           *Plaintiff nonsuit.*

TENNEY, C. J., and RICE, HATHAWAY, APPLETON, and MAY,
J. J., concurred.