THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. N. A. ENGLISH.

1. ROAD-BED, LEASED — *Continuation of Railroad of Lessee.* Where a petition avers that a great railway company leased the road-bed and side tracks of another railway company, it will be presumed after judgment in favor of plaintiff, when the evidence admitted on the trial is not brought to this court, that the road-bed leased is an extension and continuation of the railroad of the lessee.

2. AUTHORITY OF AGENT — *Sufficient Allegation.* The averment in a petition that a certain person was general manager of a railway company, and that on behalf of the company he promised to give a pass over its roads, is a sufficient allegation of the authority of the agent after judgment for plaintiff, when there is no showing that such averment was challenged in the trial court.

3. RAILROAD PASS — *Promise, Not Void.* Where land is conveyed in consideration of a parol promise of a pass for life over a railroad, such pass to be issued annually, the promise is not void under the statute of frauds because it cannot be performed within one year; when the contract was also fully executed by one party, it does not for that reason come within the statute.

4. PROMISE, *Not in Writing.* Where land is sold and the deed executed, the price of the land may be recovered though the promise to pay therefor was not in writing.

5. JUDGMENT, *Not Disturbed.* If under the pleadings and findings of fact it appears that the judgment was correct, it will not be disturbed although an erroneous instruction was given upon the evidence in the case that becomes immaterial under the findings of fact.

*Error from Sumner District Court.*

THIS cause comes here on the pleadings, verdict, findings of fact, instructions, and the judgment of the court. Trial at the May Term, 1885, and judgment for the defendant in error, plaintiff below. The petition (court and title omitted) is as follows:

"The plaintiff says that the defendant is and at all times hereinafter mentioned was a corporation organized under the laws of Kansas, and doing business as a common carrier; that the Wichita & Southwestern Company is and at all times hereinafter mentioned was a corporation organized under the laws of Kansas; that on or about the 1st day of April, 1873, and before the defendant entered into a written contract with the Wichita & Southwestern Railroad Company, whereby the defendant leased the road-bed, depot grounds, side track and rolling stock, and agreed and bound itself to operate the Wichita & Southwestern railroad; that one T. J. Peter was the agent and general manager of the defendant, and in the matters and things hereinafter set out was the agent for said Wichita & Southwestern Railroad Company; that this plaintiff, at the instance and request of said T. J. Peter while so acting for and on behalf of defendant and said Wichita & Southwestern Railroad Company, made, executed and delivered to the Wichita & Southwestern Railroad Company his certain written conveyance, a copy of which is here annexed, marked 'A,' and made a part of this petition, whereby he conveyed to the Wichita & Southwestern Railroad Company, its successors and assigns, the rights, privileges and easement to construct a depot and side track, situated in the county of Sedgwick and State of Kansas, on the land described as follows, viz.: Being a strip of land two hundred and seven feet wide, lying along, and adjoining, and parallel with, and on the east side of the line of the west side of an avenue in English addition to Wichita, Kansas, and extending in length from the north line of the southwest quarter of section twenty-one, township twenty-seven, range one east, thirteen hundred feet south; a copy of which is hereto attached, marked 'A'; that the consideration of the said conveyance was, that this plaintiff should have a life pass, by which he should at all times have the right and privilege, at any and all times he chose so to do, to ride on any of the trains of said defendant; that said consideration was promised and made by said Peter

for and on behalf of defendant, and while so acting for it as its agent in that behalf; that defendant immediately thereafter entered into and upon said real estate, and has at all times held, used and occupied the same, and has in all things satisfied and confirmed the action of said T. J. Peter therein.

"This plaintiff further avers that the defendant did, for a long time and up to and including the year 1878, carry out in good faith its agreement, and did issue and deliver to this plaintiff annually its certain annual ticket or pass in writing, whereby it authorized and permitted this plaintiff to ride on any of its trains, which pass on its face in writing stated that it was 'issued on account of depot grounds.'

"This plaintiff further avers that the defendant, notwithstanding its promise and agreement so to do, has since the year ending December 31st, 1878, and still does refuse to issue or deliver to plaintiff any pass to allow plaintiff to ride on defendant's trains or any of them unless he will agree to pay it for the privilege so to do; that by reason of its so refusing this plaintiff permission to ride on its trains as aforesaid, and by reasons of the premises herein set out, the plaintiff has been damaged in the sum of five thousand dollars, for which he demands judgment and costs of suit."

"A."

"Know all men by these presents, that we, N. A. English and Osie English, his wife, have and by these presents have given and granted unto the Wichita & Southwestern Railroad Company and to its successors and assigns, the right, privilege and easement to construct depots and side tracks upon a tract of land situated in the county of Sedgwick and state of Kansas, and described as follows, to wit: Being a strip of land two hundred and seven feet wide lying along and adjoining and parallel with and on the east side of the line of the west side of Fifth avenue of English's addition to the city of Wichita, Kansas, and extending in length from the north line of the southwest quarter of section twenty-one, in township twenty-seven, range one east, thirteen hundred feet south, and have and use the land for the purpose aforesaid forever.

"In witness whereof, we have hereunto set our hands, this the 13th day of April, 1872.

"Witness the hand of N. A. English and hand of Osie A. English, by her attorney in fact, N. A. English.

N. A. ENGLISH.<br>
OSIE A. ENGLISH,<br>
<em>By her attorney, N. A. English.</em>"

The foregoing exhibit was duly acknowledged.

Questions submitted by counsel for plaintiff, and the answers of the jury thereto, are as follows:

"1. Who has had the beneficial use and occupation of and received the rents and profits (if any have accrued therefrom) of the land described in the plaintiff's petition since the making of the deed in the plaintiff's petition mentioned?

"*Ans.*: The defendant, the Atchison, Topeka & Santa Fé Railroad Company.

"2. If the jury shall find that a contract was made by the plaintiff with the defendant for a life pass, and that said contract was made for the defendant by T. J. Peter, and shall find that said defendant had at the time given said Peter no authority to make such contract, then state whether the defendant has since that time ratified said contract by receiving the beneficent use of the land conveyed, and by issuing to the plaintiff its passes under said contract up to a certain time.

"A. The defendant has ratified the action of T. J. Peter in this case by receiving the benefit of said land and using the same; and also by granting passes to plaintiff annually for about six years."

On behalf of the defendant, questions were submitted to the jury, and answered, as follows:

"1. Did the defendant ever agree to issue to the plaintiff a pass over its line, annually, for life? The defendant agreed to give plaintiff a pass for life, but issue it annually.

"2. If so, by whom was said contract made, when was it made, and what was the consideration therefor? First, by defendant, through T. J. Peter, of Wichita, Kansas; second, April 15, 1872; third, consideration, the deed in plaintiff's petition.

"3. From what point to what point, in the state of Kansas, was the defendant's line of railroad constructed and in operation at the date of the execution of the deed mentioned and described in plaintiff's petition? From Atchison to Newton, Kansas.

"4. If, in answer to the first interrogatory, the jury shall find that the agreement therein referred to was made, did that agreement contemplate an annual pass on the Wichita & Southwestern Railroad Company's line, or was it to be over the line of the defendant railroad? An annual pass for life over the defendant's road.

"5. If, in answer to the fourth interrogatory, the jury shall say that the pass was to be over the defendant's line, was the agreement for the pass over the line as then constructed and in operation, or was it to be over the lines then constructed and thereafter to be constructed by it, and did it have any reference to lines then and thereafter leased and operated by it? The pass to be over all the defendant's roads that were constructed at the date of the refusal of the pass.

"6. What was the distance from the defendant's line of railway to the point where the lands mentioned in plaintiff's petition were situated? We do not know.

"7. What interest did the defendant have and obtain by the deed mentioned in plaintiff's petition to the lands therein described? The right to use it for side track, depot grounds, and other railroad purposes.

"8. What is the plaintiff worth financially, and what was he worth on the date of the making of the conveyance mentioned in his petition? First, forty to fifty thousand dollars; second, don't know.

"9. How often did the plaintiff ride over the defendant's line east of Newton, each year while he had a pass, upon business? About twenty-four times.

"10. How often did the plaintiff ride over the defendant's line east of Newton, each year while he had a pass, for pleasure? Two times.

"11. How often has the plaintiff ridden over defendant's line east of Newton, upon business, each year since a pass was refused him, and how much did he pay therefor each trip? We do not know.

"12. How often has the plaintiff ridden over defendant's line east of Newton each year, for pleasure, since the refusal of the pass, and how much did he pay therefor? We do not know.

"13. What is the defendant's business now, and what has been his business since the date of the refusal of his pass? We do not know."

"16. Would the plaintiff, if a pass had been issued to him, have traveled over defendant's line for pleasure more than he has; if so, how often? We think he would, but can't say how often.

"17. Would the plaintiff, if a pass had been issued to him, have traveled over defendant's line on business more than he has; if so, how often? We think he would, but can't say how often.

"18. If the jury shall say that a contract was made by the plaintiff with the defendant for a life pass, was the contract in writing? No."

"21. If the jury shall say that a contract was made by the plaintiff with the defendant for a life pass, and that said contract was made for the defendants by T. J. Peter, state who authorized him, whether the directors, or stockholders, or anyone acting for them. Under the power of T. J. Peter, general manager. We do not know whether by directors or stockholders.

"22. Who is the owner at this time of the land mentioned in plaintiff's petition, and who has been the owner thereof since the making of the deed thereon mentioned? We do not know."

Verdict for plaintiff for $4,541, and judgment thereon. The *Railroad Company* brings the case to this court.

*Geo. R. Peck, A. A. Hurd, Robert Dunlap*, and *W. P. Hackney*, for plaintiff in error.

*Hatton & Ruggles*, and *E. C. Ruggles*, for defendant in error.

Opinion by HOLT, C.: The plaintiff in error complains that the petition does not state facts sufficient to constitute a cause of action. It alleges that the Wichita & Southwestern Company is a corporation, but omits the word "railroad," although subsequently the petition alludes to it as the said Wichita & Southwestern Railroad Company. The omission was evidently not brought to the notice of the trial court; probably not noticed by the attorney for the defendant during the trial, as, in the first instruction he asked the court to give, the fact of the organization of both the defendant and the Wichita & Southwestern Railroad Company. If such omission ever rendered the petition materially defective, such defect has been waived.

He makes the further objection, that the Wichita & Southwestern Railroad Company was not alleged to be a continuation and extension of the A. T. & S. F. Rld. Co. The petition states that the defendant did lease the road-bed, depot grounds,

side tracks, and rolling stock of the Wichita &
Southwestern Railroad Company, and took pos-
session of and operated the same. We cannot
presume, in the absence of any proof or allega-
tion, after a trial and judgment for plaintiff, that the defendant
had entered into an agreement that was not allowed or author-
ized by statute. (*A. T. & S. F. Rld. Co. v. Davis*, 34 Kas. 209.)

1. Road-bed,
leased — con-
tinuation of
railroad of
lessee.

Defendant further objects, that it is not shown that one
T. J. Peter, a "general manager" of the defendant, had
authority to give a pass to plaintiff. The allegation of the
petition not only avers that he was the general manager of the
defendant, but that he was an agent and general manager of
the Wichita & Southwestern Railroad Company in the matters
and things hereinafter set out: referring to the contract giving
the pass to plaintiff; and that said pass was promised and
made by said Peter for and in behalf of said de-
fendant. We believe this is a sufficient allegation
of the authority of Peter, especially after a ver-
dict and judgment thereon in favor of plaintiff, when no evi-
dence is brought here for our consideration. The findings
also sustain the theory that Peter had authority on behalf of
the defendant to promise and give such pass to the plaintiff.

2. Authority of
agent — suffi-
cient allega-
tion.

It is objected further, that as the promise to give such pass
was not in writing and not to be performed within one year,
it was void under § 6, chapter 43, Compiled Laws of 1879,
which provides:

"No action shall be brought whereby to charge a party
.  .  .  upon any contract for the sale of lands, tenements,
hereditaments, or any interest in or concerning them, or upon
any agreement that is not to be performed within the space of
one year from the making thereof, unless the agreement upon
which action shall be brought, or some memorandum or note
thereof, shall be in writing and signed by the party to be
charged therewith, or some other person thereunto by him or
her lawfully authorized."

It is contended that because this pass was to be given to
plaintiff during his lifetime, to be issued annually, it could
not be performed within one year, and therefore that it was

void under the statute. Such is not the law. Where the contract is such that the whole may be performed within a year, and there is no express stipulation to the contrary, the statute does not apply. The contract was for the lifetime of the plaintiff; his death would terminate the contract, however soon after the making of such contract that might have happened. His death might have occurred within one year after making such contract, and in that event it would have been fully performed. The authorities are nearly uniform on this point. It has been held that a contract to support one during life; to work for a person as long as he lives; to maintain a child at the defendant's request, to continue so long as the defendant shall think proper, are not within the statute, on the theory that life is an uncertain event which might be determined within the year. (Wood on Frauds, § 270; *Hill v. Jamieson*, 16 Ind. 125; *Hutchinson v. Hutchinson*, 46 Me. 154; *Doyle v. Dixon*, 97 Mass. 208.)

*3. Railroad pass —promise, not void.*

This contract was also performed within one year upon the part of plaintiff, and the defendant cannot claim protection under the statute of frauds; its protection extends to executory contracts, and does not apply to contracts that have been executed by one party. Mr. Wood, in his treatise on the Statute of Frauds, in § 279, says:

"In England and most of the states of this country it is held that the statute only applies to contracts which are not to be performed by either side within a year, and therefore where a contract has been completely performed on one side within the year the case will not come within the statute." (*McClellan v. Sanford*, 26 Wis. 595; *Curtis v. Sage*, 35 Ill. 22; *Berry v. Doremus*, 30 N. J. L. 403; *Haugh v. Blythe, Ex'r*, 20 Ind. 24.)

The defendant further says that plaintiff cannot recover upon a verbal contract for the sale of lands. This was not a contract within the statute of frauds. It was not a contract for the sale of lands—it was the sale itself. The contract was perfected by giving the deed. This action is for damages sustained by plaintiff because the defendant refused to give him his pass for life over its road. The pass was promised to be

**4. Promise, not in writing.** given as the price of the land deeded. There is no provision of our statute which precludes a recovery for the price of lands actually conveyed, even though the agreement concerning the price be oral. (Reed on Frauds, § 658; *Hodges v. Green*, 28 Vt. 358; *Bowen v. Bell*, 20 Johns. 338; *Wilkenson v. Scott*, 17 Mass. 249; *Holland v. Hoyt*, 14 Mich. 238; *Tripp v. Bishop*, 56 Pa. St. 424; *Tuthill v. Roberts*, 22 Hun, 304.)

Our statute is unlike the British statute, which declares:

"No action shall be brought whereby to charge any person upon any contract or sale of lands, tenements, hereditaments, or any interest in or concerning them, unless the agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."

The omission in our statute of the provision concerning the sale of lands was no accident. It has its signification. It in effect exempts the sale of lands and retains only the contract for the sale of lands, not in writing, within the purview of the statute. In this respect our law is similar to the laws of most of the other states.

The case of *Becker v. Mason*, 30 Kas. 697, does not support the theory of the defendant, nor is it in conflict with the views herein expressed. That action was brought to enforce a parol contract for the sale of land. In this action the sale had been made and the deed delivered. Mr. Justice VALENTINE, after citing § 6, says:

"It will be noticed that the statute above quoted includes all contracts 'for the sale of lands;' all contracts for 'any interest therein,' and all contracts 'concerning' lands, and it is the *contract* upon which the action is to be brought 'to charge a party,' and not something else; and it is the *contract*, or some note or memorandum thereof, upon which 'the party [is] to be charged,' and not something else. It is not the sale, or the purchase, or the transfer, or a release, or some other special thing affecting or 'concerning' the real estate upon which the action is to be brought; nor is it any one of these special things upon which 'the party [is] to be charged.'"

Objection is made to the instruction which authorized the jury to fix the damages for the refusal to give the pass over the defendant's road at the time it was refused, rather than at the date of the making of the contract, it becoming important because the defendant had extended its lines in the meantime. In the absence of any evidence before us, and under the pleadings and findings, we cannot say that there was error in fixing the time at the date of refusing to give the pass. At the time the contract was made, the plaintiff was not living on the line of the defendant's road. His home was beyond its line, although it afterward extended to and through the city in which he lived, and it would be a reasonable inference, warranted by the pleadings and findings, that he contracted for a pass over the road which might be completed to the city in which he resided.

The defendant claims that certain instructions given by the court are erroneous, among others the one numbered five:

"5. If the said T. J. Peter, for and on behalf of the defendant, and at the time of making said contract, did not have authority to make the same, and the defendant, after said Peter ceased to act for it, issued to the plaintiff one or more annual passes on account of said contract, the defendant would be bound by the original contract made by Peter, as such would be a ratification of the original contract by the defendant."

Its objection to it is, that it provides that a principal might be held to ratify the act of his agent without full knowledge on his part of all the circumstances under which the contract was entered into. The principle contended for by the defendant is probably correct. It is admitted, however, by the pleadings, that the defendant had been issuing for several years an annual pass to plaintiff over its road, with the indorsement on the back thereof, "On account of depot grounds." It had taken possession of the land in question under the agent who had made the contract, and had remained in possession of the same for years. It can therefore be presumed defendant had knowledge of all the circumstances of the contract between its agent, Peter, and plaintiff, or at least full knowledge of such

facts as would have led by a proper inquiry to a complete understanding of the conditions, consideration, and all the elements constituting the contract. Under these averments and findings we cannot perceive how this instruction, even though it did not state the law correctly as an abstract proposition, could have prejudiced the defendant. Further, we think the findings of the jury concerning the authority given Peter to
5. Judgment, act for them in the first place is sufficient to au-
not disturbed. thorize a judgment, without any reference to any act that might be deemed to have been a ratification. Where the authority of an agent to make a contract originally is shown, the question of ratification is eliminated. It has no place in determining the rights of the parties. We have been compelled to construe the pleadings and findings of fact to sustain and uphold the judgment, rather than to overthrow it, and we therefore recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.