DANIEL J. DAVIS ET AL., APPELLANTS, V. RAVENNA
CREAMERY COMPANY ET AL., APPELLEES.

FILED MAY 19, 1896.   No. 6486.

1. Contracts: CONSTRUCTION. Where a contract is ambiguous, a prac-
tical construction placed upon it by the parties thereto should
prevail over any mere technical interpretation.

2. ———: ———. In case a contract is partly written and partly of
printed form, the writing controls in case of inconsistency of
provisions.

3. Subscriptions: CONSTRUCTION OF CONTRACT. The contract set out
in the opinion, between plaintiffs and various subscribers for
the erection and equipment of a butter and cheese factory, con-
strued, and *held* to be several, and not joint, and that each sub-
scriber was liable to the plaintiffs to the amount of his subscrip-
tion only.

4. Corporations: SUBSCRIPTIONS. The subscribers, in pursuance of
said contract, incorporated under the laws of this state. *Held,*
That such corporation was not liable on the contract, and that
plaintiffs cannot enforce a mechanic's lien on the property for the
amount of the unpaid subscription.

APPEAL from the district court of Buffalo county.
Heard below before HOLCOMB, J.

*Dryden & Main,* for appellants.

*Calkins & Pratt* and *Marston & Nevius, contra.*

NORVAL, J.

This is an action by Daniel J. Davis and T. J. Rankin,
a firm doing business under the name and style of Davis
& Rankin, against the Ravenna Creamery Company and
Erastus Smith and forty-four other subscribers to the
stock of said company, to foreclose a mechanic's lien.
There was a decree for the defendants, and plaintiffs
appeal.

It appears from the record that on the 24th day of
August, 1889, Davis & Rankin entered into a written

agreement with the individual defendants to erect and equip a butter and cheese factory at Ravenna according to certain specifications. The following is a copy of the contract, excepting the parts not material to the present inquiry:

"We, Davis & Rankin, parties of the first part, hereby agree with the undersigned subscribers hereto, parties of the second part, to build, erect, complete, and equip for said parties for the second part a combined butter and cheese factory, at or near Ravenna, Nebraska, as follows, to-wit: * * * Said building shall be constructed and finished in substantial accordance with the specifications herein, in a thorough and workmanlike manner, the engine, boiler, and all the machinery and fixtures shall be properly set up, and shall be in good running order before the parties of the second part shall be required to pay for said factory.

"The parties of the second part hereby agree to furnish, at their own expense, suitable land for said building, together with sufficient water on said lot, for the use of said building, and they shall be credited therefor, as payment on said contract, the sum of $300; and it is further understood that in case the said second party shall fail to furnish said land and water within ten days after the execution of this contract, then said Davis & Rankin, at their option, may furnish said land and water. * * *

"Said Davis & Rankin agree to erect said butter and cheese factory as set forth by the above specifications, for the sum of sixty-eight hundred and fifty dollars ($6,850), payable half cash when completed, balance in four months from time the creamery is completed, by giving secured notes at the rate of ten per cent per annum. And it is hereby understood that subscribers are liable only for amount and number of shares signed by them, shares to be for one hundred and fifty dollars each.

"We, the subscribers, agree to pay the above amount

for said butter and cheese factory when completed, payment as above, and we, the said subscribers, agree to accept the same as soon as completed according to said specifications. Said building to be completed within ninety days, or thereabout, after the above amount, $6,850, is subscribed.

"As soon as the above amount of $6,850 is subscribed, or in a reasonable time thereafter, the said subscribers agree to incorporate under the laws of the state, as therein provided, fixing the aggregate amount of stock at not less than $6,850, to be divided into shares of $150 each. Said share or shares as above stated to be issued to the subscribers hereto in proportion to their paid up interest herein.

"It is hereby understood that Davis & Rankin will not be responsible for any pledges or promises made by their agents or representatives that do not appear in this contract, and a part thereof, either in print or writing.

"For a faithful performance of our respective parts of the above contract, we bind ourselves, our heirs, executors, administrators, and assigns.

"Executed and dated this 24th day of August, 1889."

The contract was executed by the plaintiffs, represented by a duly authorized agent, and was also signed by each of the individual defendants in the following form:

| Name of Subscriber. | No. of Shares. | Amount of Stock after Incorporation. |
|---|---|---|
| Erastus Smith | 3 | $450 |
| C. E. Davis | 1 | 150 |

The signature of Mr. Davis is followed by the names of forty-three others, making the aggregate amount of subscriptions $6,850. The factory was constructed and equipped by the plaintiffs in accordance with the terms of the contract upon the lot furnished by the subscribers to the scheme, and plaintiffs have collected, in cash and notes from various subscribers, $5,552.76, leaving $997.24 of the contract price, with interest, unpaid and unse-

cured, after deducting $300 for the value of the site. For this balance, plaintiffs filed, within the statutory period, a statement claiming a mechanic's lien. Which of the subscribers have failed to pay or secure their subscriptions the petition does not allege. It also appears that shortly after the execution of the contract, and in pursuance of its provisions, the Ravenna Creamery Company was incorporated by the subscribers, and said company has ever since been in possession of, and operated, the plant, as owner. Upon the trial the district court made findings that the contract created a several liability on the part of each subscriber to the amount of his individual subscription only, and that plaintiffs have no lien on the factory for the balance due them for its erection.

This case hinges upon the construction to be placed upon the contract above set out. If a joint and several obligation is imposed upon the subscribers to pay the whole contract price, then the decree of the lower court cannot stand. On the other hand, if their undertaking was several only, binding them to pay the amount set opposite their respective names, which sum varies from $75 to $450, the plaintiffs are not entitled to a lien. The contract is partially printed and a portion in writing. The first sentence thereof is printed, and reads that "We, Davis & Rankin, parties of the first part, hereby agree with the undersigned subscribers hereto, parties of the second part," etc. There are the following printed clauses in the agreement: "The parties of the second part hereby agree to furnish, at their own expense, suitable lands for said building," etc., and "We, the subscribers, agree to pay the above amount for said butter and cheese factory when completed, payment as above, and we, the said subscribers, agree to accept the same as soon as completed according to said specifications." If these clauses were construed by themselves, without regard to other provisions relating to the character of the obligation assumed by the several subscribers, we would

not hesitate to say that their undertaking was a joint one, binding them to pay the full sum of $6,800; but there is another stipulation, which was written into the printed form used in preparing the agreement, which must not be overlooked in determining the purport of the contract. It declares that "it is hereby understood that subscribers are liable only for the amount and number of shares signed by them, shares to be for one hundred and fifty dollars each." This, taken in connection with the manner in which the contract was signed by the individual defendants, and the provision relating to the incorporation, shows that it was not the intention that each should alone be liable for the subscriptions of all, but rather that each person signing agreed to pay the sum subscribed by himself, and no more. Manifestly this was the intention of all the parties to the agreement, and was so understood by them at the time. This must have been the construction placed upon the contract by plaintiff's agent, D. F. Gibbons, who was sent by them to Ravenna to make settlement after the factory was completed. He testifies: "I began the work of collecting and was requested by plaintiff to collect from each individual; this I endeavored to do, although it was much more trouble and expense to me. I proceeded in my work of collecting until, in cash and notes, I had received about $5,500, and there I stuck,—couldn't get any more; the parties claiming that those who had already paid did not owe any more, and parties who had not paid had their own pretexts or reasons for not paying, or were worthless." It was also shown by this witness' testimony that he accepted of some of the subscribers unsecured notes, while the contract called for them to be secured. He says he did this "simply as an evidence of indebtedness, * * * and as an accommodation to the various subscribers." It was after he had failed to collect the full contract price that, for the first time, the responsible subscribers were told that they must make up the deficit; whereupon Mr. Gibbons

was by them informed "that each person was only holden for what he signed." The evidence discloses that both parties regarded the liability of the subscription as several merely, up to the time it was discovered that the whole sum was not collectible, and we would be justified in adopting the practical construction placed upon the contract. by the parties themselves; but we need not rest our decision upon that ground alone. It is a familiar canon of interpretation that a contract must be considered as an entirety in order to ascertain the true intention of the parties. There is another well recognized rule of construction that a written stipulation in a contract will prevail over a printed provision therein. Applying these laws of construction to the case at bar, we are persuaded that the contract was several and not joint, and that each subscriber is liable only for the amount he agreed to pay. While it is true the printed portion of the contract contains some language which would admit of a construction that the obligation was joint, still, reading the whole agreement, the intention is manifest that each subscriber did not intend to bind himself individually to pay the entire contract price of the factory, else he would not have written after his name the amount subscribed by him, nor would it have been expressly stipulated that each subscriber should be liable for his own subscription alone.

In Clark, Contracts, p. 604, the author, in discussing joint and several contracts, observes: "In all cases the intention of the parties is to be sought, and must govern. Wherever the debt is payable by two or more persons, as where the words, 'we promise,' etc., are used, the liability is *prima facie* joint, and not several, nor joint and several; but the use of such expressions will not make the promise joint if, from the whole instrument, a contrary intention appears. * * * In the case of subscriptions by a number of persons to promote some common enterprise the promises, though joint in form, are held to be several. Each subscriber is held to promise

severally to pay the amount of his subscription, and an action against all subscribers jointly will not lie. It clearly appears from the character of such a contract that each subscriber only intends to bind himself for his own subscription, and this intention must prevail, notwithstanding the joint form of the promise." The text is sustained by numerous authorities, and our conclusion is in harmony therewith.

Contracts in form and essential features almost identical with the one before us have been similarly construed in the following cases: *Davis & Rankin Building & Mfg. Co. v. Barber*, 51 Fed. Rep., 148; *Davis & Rankin Building & Mfg. Co. v. Jones*, 66 Fed. Rep., 124; *Davis & Rankin Building & Mfg. Co. v. Hillsboro Creamery Co.*, 37 N. E. Rep. [Ind.], 549; *Davis & Rankin Building & Mfg. Co. v. Booth*, 37 N. E. Rep. [Ind.], 818; *Davis & Rankin Building & Mfg. Co. v. McKinney*, 38 N. E. Rep. [Ind.], 1093; *Davis v. Belford*, 70 Mich., 120; *Gibbons v. Grinsel*, 79 Wis., 365; *Frost v. Williams*, 50 N. W. Rep. [S. Dak.], 964; *Gibbons v. Bente*, 53 N. W. Rep. [Minn.], 756; *Davis & Rankin Building & Mfg. Co. v. Murray*, 60 N. W. Rep. [Mich.], 437; *Davis & Rankin Building & Mfg. Co. v. Cupp*, 62 N. W. Rep. [Wis.], 520.

The only case directly in point that has been called to our attention which holds that a contract like the one at bar imposed a joint liability is *Davis v. Shafer*, 50 Fed. Rep., 764, which decision the circuit court of appeals for this circuit declined to follow in *Davis & Rankin Building & Mfg. Co. v. Jones*, 66 Fed. Rep., 124, and it was expressly disapproved in some of the other cases cited above.

In *Davis & Rankin Building & Mfg. Co. v. Knoke*, 57 N. W. Rep. [Minn.], 62, it was held that the defendant assumed a joint obligation to pay the contract for the erection and equipment of a creamery. It is distinguishable from this case. The contract there construed was materially different from the one under consideration. It contained a provision to the effect that the subscribers, after paying twenty-five per cent in cash, should settle the balance

"by good approved joint notes." Clearly they jointly assumed the payment of the contract price.

In *Davis v. Bronson*, 50 N. W. Rep. [N. Dak.], 836, cited to support plaintiff's interpretation of the contract, there is this resemblance to the case before us: The same parties were plaintiffs in both suits, and each contract was for the erection and equipment of a creamery. In the case alluded to the defendants stipulated to pay $5,000 for the plant, and there was a general agreement on the part of all to pay the sum, which was not varied or modified by any other clause in the agreement. The promise being a joint and not a several one, it was correctly decided that each subscriber was holden not only for the amount of his own subscription, but for that of the others as well.

In *Holt v. Field*, 25 Fed. Rep., 123, the question here involved did not arise and was not passed upon. The decided weight of authority, as well as better reason, sustained the conclusion we have reached. The contract being a several one, and plaintiffs having agreed to accept the individual obligation of the several subscribers, no personal judgment can be recovered against them for the balance due.

Is the Ravenna Creamery Company liable for the unpaid contract price, and can a lien be enforced against the plant in its hands? Counsel for plaintiffs argue for the affirmative of the proposition. To us it seems that the conclusion reached as to the character and scope of the contract, in effect, settles these points adversely to the contention of counsel. If the corporation is personally liable it is not because of any contract it entered into with plaintiffs, for it made none. No intent to bind the corporation is disclosed by the agreement set out in this opinion, nor does it appear from the record that it ever assumed the payments of the several subscribers. The contract being several, plaintiffs were not entitled to a mechanic's lien on the joint property for the unpaid contract price. Whether a lien can be enforced upon the

separate interests of the delinquent subscribers does not arise in this case, since the petition is framed upon the theory that the contract was joint, and not several, and it does not aver which subscribers have failed to pay. To hold that plaintiffs can enforce a lien on this property would indirectly require each paying subscriber to pay more than he expressly promised. The conclusion is irresistible that the corporation defendant cannot be subjected to a personal judgment, nor can a mechanic's lien be enforced on its property for the unpaid contract price. (See authorities already cited.) The decree is

AFFIRMED.