### W. F. TRYBER v. THE GIRARD CREAMERY AND COLD-STORAGE COMPANY.

**No. 13,248.**   (73 Pac. 83.)

#### SYLLABUS BY THE COURT.

CORPORATIONS—*Liability for Obligations of Promoters.* A corporation which does not adopt or assume the contracts of its incorporators, made before organization, will not be liable thereon merely because it takes title to, and uses and enjoys, property produced under such contracts, if, in making the contracts, the incorporators did not act for the corporation or on its behalf or credit, but upon their own individual responsibility, and without any contemplation of corporate liability.

Error from Crawford district court; WALTER L. SIMONS, judge.   Opinion filed July 10, 1903.   Affirmed.

*W. F. Rightmire*, for plaintiff in error.

*B. S. Gaitskill*, for defendant in error.

The opinion of the court was delivered by

BURCH, J. : A large number of persons entered into a contract with the Chicago Building and Manufacturing Company, of Chicago Ill., for the establishing of a butter factory and ammonia cold storage at or near the city of Girard.   The company agreed to erect and equip the proposed factory for the sum of $5000. The individuals associating themselves in the enterprise subscribed sums ranging in amount from $25

to $100 for the payment of the contract price of the factory, stipulating that each one should be liable to the company for the amount subscribed by him and no more.

The contract provided that any part of the price of the factory not paid when due should be settled by a satisfactory interest-bearing promissory note. It also provided that subscriptions might be made in excess of the sum of $5000, and that the total subscription should belong to the company until the full contract price due it should be collected and paid in cash, after which the remainder of the subscriptions, or notes, should become the property of the persons signing the agreement, to be collected and used by them as working capital. The contract provided that the subscribing individuals should appoint a committee who should have full authority to represent all their interests, and the construction and equipment of the factory was made subject to the supervision and scrutiny of such committee. That committee, together with a special agent of the company, was to determine if the factory had been completed according to contract. When the factory was completed the subscribing individuals agreed to pay the contract price. A paragraph of the contract contained an agreement of the subscribing individuals to incorporate under the laws of this state, presumably for the purpose of operating the factory, although the corporate object was not defined. It was agreed that the capital stock of the proposed corporation should be not less than the whole amount of the subscriptions to the contract, to be divided into shares of $100 each, to be issued to each subscriber in proportion to his paid-up interest in the contract with the Chicago Building and Manufacturing Company. Fifty-seven individuals and firms signed this contract,

subscribing in the aggregate $5200.   The factory was built, accepted, and placed in operation.  The proposed corporation was formed under the name of the Girard Creamery and Cold-storage Company, only subscribers to the original contract becoming stockholders.   The title to the factory and its equipments, after completion, was transferred to the new corporation. The sum of $922.70 of the contract price was not paid.   The contract of subscription was assigned to plaintiff, who brought suit against the Girard Creamery and Coldstorage Company for the amount due.

An amended and substituted petition set forth the foregoing facts, with, however, many conclusions as to the meaning and effect of the contract, and as to the relations of parties to each other and to the new creamery company.   The petition further alleged that without consideration paid by it, and with full knowledge of all the terms of the contract and of the building and equipping of the factory under such contract, and of the fact that the portion of the purchase-price of the factory sued for was unpaid, the creamery company had accepted title to the property, taken possession of it, and received and continued to retain all the benefits of the original agreement.   A general demurrer to this pleading was sustained, and, the plaintiff declining to amend further, judgment was rendered for the defendant.

The single question for determination is whether the Girard Creamery and Cold-storage Company is liable for the debts of its incorporators.  The contract set out is utterly barren of any obligation on the part of the corporation to be formed to pay debts incurred by the individual incorporators in the construction and equipment of the factory.   The manufacturing company dealt with the incorporators as

individuals. Separate and not joint liabilities on their part were expressly stipulated. Special forms of security for the payment of subscriptions were agreed upon, and after the collection of the price of the factory out of the subscription list any unpaid portions and any notes taken for unpaid portions were to be returned to the subscribers for their use as working capital, and not to the corporation. Extreme care seems to have been taken not to involve the prospective corporation in any liability upon the subscription list whatever. If recourse upon it were to be had, language might easily have been framed to indicate the fact. The contract does not purport to be made in furtherance of any corporate power or purpose. Instead of that, the formation of a corporation by the subscribers to the fund for the payment of the price of the factory was merely incidental to the accomplishment of their individual desires to secure a creamery. They agreed to adopt a corporate form of management for the obvious facilitation of their affairs. In this the manufacturing company had no interest. When the factory was turned over the manufacturing company's identification with the enterprise ended. The subscribers did not profess or pretend to be acting in the name of any corporation to be formed, nor for the benefit of any such corporation. They made no representation that the corporation would become liable for their debts, gave no guaranty to that effect, and the manufacturing company relied on no such security. When title to the property was taken over by the corporation it was not through any provision of the contract in which the manufacturing company had any interest. Having produced the factory upon the personal and individual credit of the persons with whom it contracted,

without reservation of lien, without assurance of in-
demnity, express or implied, and without any con-
templation on the part of anybody that the corporation
should be held, the manufacturing company and its
assigns cannot compel the corporation which such
persons afterward formed to pay the debt incurred
simply because it obtained the property.

The liability of a corporation for the engagements
of its promoters is discriminatingly stated in Thomp-
son on Corporations, volume 7, section 8444, as fol-
lows :

"A corporation will be bound by an engagement
entered into in its behalf by its promoters, or by per-
sons professing to act for it before its organization, if,
after it is organized and with full knowledge of the
facts, it assumes the contract and agrees to pay the con-
sideration, or accepts and retains the benefits of the
contract, provided the contract is one which the cor-
poration itself might have made in the first instance."

In the American and English Encyclopedia of Law,
volume 23, second edition, page 242, the limitations
upon such liability are thus expressed :

"It has been pointed out that not all contracts
made with promoters would be binding upon a subse-
quently formed company, but only those that are
made upon the credit of the corporation and with a
mutual expectation that the promoters would form a
company, and that the company would assume the
contract.   No rights legal or equitable arise in favor
of a corporation in respect to transactions, whether
complete or inchoate, merely because entered into in
contemplation of the creation of such corporation.
The mere fact that a corporation formed from the
members of a prior copartnership and others has re-
ceived by transfer the assets of such copartnership
will not charge it with the payment of the debts of
the copartnership.   Only those persons who have done
work directly for the proposed corporation can claim

the benefit of this principle.    Those who are employed by promoters must look to their employers.''

In the carefully considered case of *Little Rock & Ft. Smith R. R. Co. v. Perry*, 37 Ark. 164, 189, 191, it was said :

''Whilst the equity is, in all of them'' (referring to English cases cited), ''readily acknowledged, under the circumstances, they are all cases where the projectors were acting under a preliminary organization to obtain charters and perfect the scheme, and the contracts, though made with the projectors, were properly *on behalf of* the intended companies, and with the view, entertained by both parties at the time, of having them adopted by the companies, when perfected and empowered to do so.    The equity is based upon the ground that, under such circumstances, it would be a fraud upon the'vendor, or the person withdrawing an opposition, if the company, which had been thus pledged in advance by its creators, and obtained its franchises through such pledges, should be allowed to violate them.    None of the cases go to the extent of holding that any and all contracts made with the projectors of a road, upon their *individual* responsibility, and without any mutual expectation that they would.form a company, which would assume the contract, would nevertheless be binding on a company, if the persons bound should afterwards organize themselves into a corporation, and put into it the property acquired, or the results of the services rendered.    Such a ruling would destroy all distinction between the liabilities of corporations and those of its individual members, and, it may be added, that so wide and sweeping an equity would be very apt to deter any new subscriptions of stock under any charter.    .    .    .

''From all the authorities, it seems clear that, in order to recover, in.an action.at law, the plaintiff must show either an express promise of the new company, or, that the contract was made with persons then engaged in its formation, and taking preliminary steps thereto, and that the contract was made on behalf of the new

·company, in the expectation on the part of plaintiff, and with the assurance on the part of the projectors, that it would become a corporate debt, and that the company afterwards entered upon and enjoyed the benefit of the contract, and by no other title than that derived through it.    From these circumstances an affirmance would be implied.    Whether equities might arise under other circumstances, is a matter to be considered when duly presented in a chancery case.    No authorities have gone the length of holding that 'any contract made with individuals, exclusively upon individual credit, will become the contract of any future corporation they may form, for the more convenient management and use of the benefits of it.''

The case of *Davis & Rankin Building etc. Co. v. Hillsboro Creamery Co.*, 10 Ind. App. 42, 44, 45, 46, 37 N. E. 549, is almost identical in all its features with the one under review.    In the opinion it was said :

''The appellant contends that the contract declared on was made for the contemplated corporation, that the subsequent recognition of it by the corporation after it came into existence, and accepting the benefits thereunder, makes it the contract of the corporation.

''It seems to be settled that the promoters of a corporation may make a contract in the interest of the contemplated corporation, and when the corporation shall become fully organized it may recognize and adopt the contract, and make it the contract of the corporation.    (*Whitney v. Wyman*, 101 U. S. 392, 25 L. Ed. 1050 ; *Stanton v. New York etc. R. W. Co.*, 59 Conn. 272, 22 Atl. 300, 21 Am. St. Rep. 110.)

''But if the contract declared on was not made primarily for the benefit of the corporation, and if the corporation never adopted it or promised to perform it, these rules will not apply to this case.    Nor will the simple acceptance of the benefits make the corporation liable under the contract.    .   .   .

''The evident purpose of Davis & Rankin in entering into the contract was to obtain the $5000 ; while the primary purpose of the other contracting parties

was to secure a factory for the manufacture of butter and cheese ; the manner in which the business should be conducted was of only secondary consideration, and a matter in which Davis & Rankin had no interest and could have no concern.   .   .   .

"The appellant insists that Davis & Rankin were interested in the stipulation for the incorporation, but we do not think so.   This was an agreement among the promoters themselves.   If, after the full amount of the stock had been subscribed, Davis & Rankin had completed the factory, the subscribers would have been liable to pay for it, whether the subscribers ever completed the incorporation or not."

In *Davis v. Ravenna Creamery Co.*, 48 Neb. 471, 478, 67 N. W. 436, it was sought to charge with a lien the property acquired by the creamery company under circumstances quite similar to those under consideration.   A part of the decision was as follows :

"Is the Ravenna Creamery Company liable for the unpaid contract price, and can a lien be enforced against the plant in its hands?   Counsel for plaintiffs argue for the affirmative of the proposition.   To us it seems that the conclusion reached as to the character and scope of the contract, in effect, settles these points adversely to the contention of counsel.   If the corporation is personally liable, it is not because of any contract it entered into with plaintiffs, for it made none.   No intent to bind the corporation is disclosed by the agreement set out in this opinion, nor does it appear from the record that it ever assumed the payments of the several subscribers.   The contract being several, plaintiffs were not entitled to a mechanic's lien on the joint property for the unpaid contract price."

Other authorities are cited in the cases from which quotations have been made.

The case of *Davis v. Butter Co.*, 52 Kan. 693, 35 Pac. 776, does not aid in the solution of this controversy, for the reason that the petition there sustained alleged

that the corporation adopted the agreement of its promoters and assumed and agreed to pay the amounts due from them.   No such allegation appears in the amended and substituted petition found in the record.

The judgment of the district court is affirmed.

All the Justices concurring.