No. 18,749.

GEORGE C. DELGARNO AND ANNA B. DELGARNO *Appellees*, v. THE MIDDLE WEST PORTLAND CEMENT COMPANY et al. (THE MIDDLE WEST PORTLAND CEMENT COMPANY, *Appellant*).

SYLLABUS BY THE COURT.

1. PLEADING—*No Misjoinder—Petition States Cause of Action.* The petition examined and held not to be demurrable for misjoinder or for the failure to state a cause of action.

2. TRIAL—*Joinder of Legal and Equitable Actions—No Preju-dicial Error.* In an action for a money judgment equitable relief was also sought. Both features of the case were heard together, and the jury were instructed that a part of the evidence was admitted because of its effect upon matters to be decided by the court, but that they might consider any of it that threw light upon the matters submitted to them. *Held,* that under all the circumstances of the case it does not appear that material prejudice resulted.

3. TRIAL—*No Error.* Other rulings examined and held not to constitute error.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed January 9, 1915. Affirmed.

*H. A. Ewing, S. A. Gard,* and *G. R. Gard,* all of Iola, for the appellant.

*Charles H. Apt,* and *Frederick G. Apt,* both of Iola, for the appellees.

The opinion of the court was delivered by

MASON, J.: George C. Delgarno and his wife obtained a judgment for $9000 and interest, against the Middle West Portland Cement Company, and it appeals.

Complaint is made of orders overruling a motion to require the several causes of action set out in the petition to be separately stated, and a demurrer on account of their misjoinder. The more important allegations of the petition may be thus summarized:

The Delgarnos were the owners of a 240-acre tract of land in Allen county. Acting in behalf of a corporation about to be organized for the manufacture of cement, and of themselves and other individuals interested in such organization, E. C. Gatlin and R. C. Patterson contracted on September 14, 1906, for the purchase of the land for $18,000. One-half the price was paid, and a deed was made (running to Gatlin, but taken by him for the benefit of the corporation and its organizers) and placed in a bank to be delivered upon the payment of the balance. [The plaintiffs' evidence was that a contract in writing was executed, by which a cement plant was to be built within

three years, the company to have the option to pay in cash or in stock after the plant was built.] On the 27th of the same month the deed was delivered, with the consent of Delgarno, without this payment, upon an oral agreement (the previous written contract being destroyed) that $9000 of the capital stock of the corporation should be put úp to secure it, and that unless a cement plant should be built and in operation within three years the plaintiffs should be unconditionally paid in cash, with interest. To induce Delgarno to enter into this arrangement false statements were made to him as to matters affecting the value of the stock. The corporation was organized, its name being the Union Portland Cement Company. The title to the land was transferred to it. Stock was issued in the name of the plaintiffs and deposited with a trust company, the plaintiffs knowing nothing of the transaction, excepting that they were told that stock had been deposited to secure the payment of the amount owing to them. A new corporation was created called the Middle West Portland Cement Company, which is a reorganization of that first named, and is liable for its obligations. Bonds of the new corporation, secured by mortgage on its property, were issued to the individual defendants without consideration. This corporation, in July, 1909, gave its note to Delgarno for the interest on the deferred payment. The three years have expired and the plant has not been built or begun. The new corporation has failed to comply with the statute in several respects.

The plaintiffs asked judgment against all of the defendants for the amount of the unpaid purchase price, with interest, and that the judgment be declared a first lien on the land. They also asked for the appointment of a receiver to take charge of the property and records of the company and to preserve them, subject to the orders of the court. Judgment was rendered against the Middle West company for the amount claimed.

Delgarno v. Cement Co.

The case was dismissed as to one of the individual defendants and continued as to the others. The cause was reserved for further action regarding the equitable relief sought and the receivership applied for.

The appellant contends that several causes of action were stated, not all of which were capable of joinder in the same petition. These different causes of action are said to be: (1) for the setting aside of certain deeds on the ground of fraud; (2) on a contract for the purchase of the land, a lien being asked for the unpaid purchase price; (3) for the winding up of the corporation by means of a receivership, because of its failure to comply with the law; and (4) against the individual defendants as promoters of the corporation. We regard the petition as declaring upon a promise to pay the balance of the purchase price of the land in cash in three years, if within that time a cement plant had not been established. Various allegations of bad faith are made, but their purpose seems to be to form a basis for holding the individual defendants, as well as the corporation, liable upon the promise, and for asserting a lien against the land. The allegations of a failure to observe the law regarding corporations, and the application for a receivership, may be considered as incidental to the main purpose of the action, looking to the enforcement of such money judgment as might be rendered. Some of the language used may tend to suggest other theories, and some of it may be surplusage, but we can not believe that the defendant was materially prejudiced by the rulings referred to.

The contention is also made that the petition did not state a cause of action against the appellant, because it was not a party to the purchase of the land, and there are no sufficient averments of its assumption of liability for the purchase price. There were direct statements that the contract was made in its behalf, and the title taken for its benefit; and its ratification

42—93 KAN.

and adoption of the transaction is fairly inferable from the other allegations already referred to.

The action was brought in October, 1911. The appellant maintains that it is barred by the two-year statute of limitations applicable where relief on the ground of fraud is sought, or at any rate by the five-year statute. The action is one on the contract to pay in three years unless the plant should be built, and therefore did not accrue until September, 1909. The statute of frauds is invoked on the theory that the plaintiffs rely on an oral promise to pay the debt of another and on an oral agreement not to be performed within a year. The alleged obligation of the corporation is direct and not collateral, and the statute of frauds can not be used to defeat the payment of the purchase price of land to which a deed has been made and accepted. (*A. T. & S. F. Rld. Co. v. English*, 38 Kan. 110, 16 Pac. 82; 20 Cyc. 231.)

A demurrer to the evidence on the part of the appellant was overruled, and complaint is made of that ruling. We think there was evidence to sustain the substantial allegations of the petition, although there was some variance in detail. The deed was made by the Delgarnos to Gatlin September 14, 1906. On the 18th of the same month the Union company was organized, and a meeting of the directors was held at which Patterson (who was one of them, and was also chosen general manager) made a written offer as trustee to convey to the company certain land (including the Delgarno tract) for stock. The proposal was accepted. On September 27 Gatlin deeded the same land to Patterson, who was described as "trustee for Union Portland Cement Company, a corporation." This was the same day that the deed from the Delgarnos to Gatlin was delivered, and that the conversation took place which the plaintiffs assert resulted in the oral contract sued on. Stock was issued to Gatlin to the amount specified in his offer, and he assigned $9000 of it to Delgarno. When the Middle

West company was organized the stock was exchanged for bonds of that company. Delgarno testified that he held the stock and bonds only as security. There is difficulty in reconciling some parts of his testimony with others, and with the documentary evidence. In letters complaining of the delay in establishing the cement plant he referred to himself as a stockholder in the company. He sent a letter to the Union company purporting to enclose his stock in that company, to be transferred to bonds and stock of the Middle West company, and asking for a note for the "interest on the stock." The note he received from the new company bore a memorandum describing it as a dividend on Union company stock. He signed a receipt for it under that description. Apparently, however, he was not sufficiently familiar with the kind of transactions in which he became involved to understand their legal effect, or to express himself with clearness or accuracy. The appellant insists that the evidence conclusively shows that Gatlin, and not the corporation, bought the land, and that Delgarno accepted stock in payment of the balance of the price. The effect of any seeming contradictions was for the jury. We think there was evidence to support the findings implied by the verdict, that the land was purchased in behalf of the corporation, that it adopted the bargain, and that the agreement called for a payment in cash unless the cement plant should be constructed within the time mentioned, and these were the vital matters in controversy.

Objection is made to the admission of a large amount of evidence, principally minutes of meetings of the stockholders and directors of the corporations. Some of it had a bearing upon the connection of the company with the original transaction. A part of it was admitted on the theory that is was pertinent to the equitable matters presented for the consideration of the court, the statement being made that the instructions

would limit the effect of this class of testimony. An instruction was given on the subject in these words:

"You are instructed that inasmuch as the Petition of the plaintiffs invokes equitable aid from the Court, the evidence has been permitted to take a wide range touching the organization and business operations of the corporations defendant named in the Petition much of which relates especially to such equitable questions as are involved and for the consideration of the Court upon such propositions and which issues are reserved to the Court, yet all such evidence is competent and for your consideration insofar as it may throw any light upon the propositions that will hereinafter in these Instructions be submitted to you for your determination."

The appellant insists that as the result of these proceedings the jury were allowed to consider a mass of irrelevant evidence, greatly to its prejudice. By the instruction quoted they were told that they might consider all the evidence, so far as it threw any light on the questions submitted for their decision, and they were left to determine for themselves what part of it was of that character. Such an arrangement might in some situations be obviously prejudicial. But here the evidence which was irrelevant to the issues submitted to the jury does not seem to be of a character likely to affect their judgment, and they were admonished that it did not have any necessary bearing upon the case so far as they were concerned. We do not think such presumption of prejudice arises as to require a reversal.

An instruction is objected to on the ground that it amounts to a statement that the mere acceptance and retention of benefits of a promoter's contract makes the corporation liable. We can not regard it as open to this construction. It consists essentially of the syllabus in *Tryber v. Creamery Co.*, 67 Kan. 489, 73 Pac. 83, coupled with a text that is quoted with approval in the opinion. (p. 493.) Another instruction is criti-

cised as omitting a full statement of the matters necessary to make the corporation liable on a contract made by the promoters, while undertaking to enumerate the elements necessary to sustain the plaintiffs' case. The rule having been once stated in full, we do not think prejudice can have resulted from its subsequent abridgment.

The judgment is affirmed.